**UNITED STATES of America,**
**Plaintiff/Appellee,**

v.

**Harvey Willard MERRIWEATHER,**
**Defendant/Appellant.**

**No. 85–3028.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 3, 1985.

Decided Nov. 29, 1985.

Frank Noonan, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Hollis K. McMilan, Deputy Federal Public Defender, Portland, Or., for defendant-appellant.

Before FLETCHER and BOOCHEVER, Circuit Judges, and AGUILAR,* District Judge.

BOOCHEVER, Circuit Judge:

Merriweather appeals his conviction on several counts of bank robbery and illegal possession of a firearm. He contends, inter alia, that the police secured evidence supporting a search warrant by an illegal arrest of Merriweather's associate, and that the money stolen from the bank should have been suppressed because it was initially discovered by an admittedly illegal search. We hold that the arrest of the associate was legal and that the money was rediscovered by independent means pursuant to a valid search warrant. Accordingly we affirm.

## FACTS

On July 12, 1984, one man wearing a ski mask and armed with a long-barrelled pistol wrapped in tape robbed a branch of the Lincoln Savings & Loan. The robber was described as a white male, 5′8″, 170–75 lbs., and brown hair. On July 19, 1984, one man wearing a ski mask and carrying a long-barrelled pistol robbed a branch of the First Interstate Bank of Oregon. The robber was described as a white male, 5′6″ to 5′7″, 150–160 lbs., and light brown hair. He was observed fleeing the scene in a late 1970's Firebird/Camaro, Oregon license KUQ 319. That license was issued to Mer-

* Honorable Robert Aguilar, United States District Judge for the Northern District of California, sitting by designation.

riweather and a woman not involved in this case for a 1976 Firebird.

On July 31, 1984, two men wearing ski masks, one of whom carried a large handgun, robbed a branch of the United States National Bank of Oregon. The gunman was described as a white male, 20–29 years old, 5'7" to 5'9", 150–55 lbs.; the other as a white male, 20–29 years old, 5'7" to 5'9", 140–50 lbs., and brown hair.

Shortly after this robbery, the Oregon police spotted a Firebird with Oregon license KUQ 319 parked at a Motel 6. The police saw two white males take what looked like clothing items from the car and go to the motel. The manager informed the police that Merriweather was registered in room 65 and had listed the Firebird as his car.

Shortly after getting this information, the police saw one of the men leave room 65 and walk away. FBI agents stopped him one block from the motel. He identified himself as Paul Caruso. The agents arrested him, and after being advised of and waiving his rights, Caruso told the agents that he and Merriweather had just robbed the United States National Bank, and that Merriweather's share of the money was in room 65.

Later that same day, the FBI arrested Merriweather outside room 65. When they arrested him, they checked his room to see if anyone else were present, and secured the room until a warrant could be obtained. During the room check, one agent opened the toilet tank and observed a large sum of money inside it.

FBI agent Cline applied for a search warrant for room 65, supporting his application with an affidavit in which he informed the magistrate of the money in the tank, but explicitly requested that the magistrate not consider this information in deciding if probable cause existed. The magistrate issued warrants to search the motel room, the Firebird, and a gym bag in plain view at Merriweather's arrest.

The search warrants were executed by FBI agents with no knowledge of the existence or location of the money, as proposed by agent Cline in his affidavit. The agents discovered the money in the tank, some of which was identified by serial number as coming from the bank robbed on the 31st, a .44 caliber handgun hidden in the room, and a .12 gauge shotgun hidden in the Firebird.

Merriweather, who had previously been convicted of bank robbery, was indicted along with Caruso on three counts of bank robbery and four counts of unlawfully (as a convicted felon) possessing firearms. He unsuccessfully moved to suppress Caruso's statements to the police and the evidence found in the searches of the motel room and the Firebird. He was then convicted of two counts of bank robbery (the July 19th and July 31st robberies) and four counts of possession of a firearm (July 12, 19, and 31st—handgun; July 31st—shotgun). Merriweather subsequently and unsuccessfully made motions for a judgment of acquittal and for a new trial. This appeal followed.

I.

ADMISSIBILITY OF THE EVIDENCE

*A. Standard of Review*

Merriweather bases his challenge to admission of the evidence found in the motel room on the allegedly illegal arrest of Caruso and on the illegality of the first warrantless search of the motel room. We review these fourth amendment issues, which are mixed questions of fact and law, de novo. *See United States v. Bagley,* 772 F.2d 482, 489 (9th Cir.1985) (probable cause to seize auto); *United States v. Humphrey,* 759 F.2d 743, 749 n. 15 (9th Cir. 1985) (plain view doctrine); *United States v. Alfonso,* 759 F.2d 728, 741 (9th Cir.1985) (probable cause to arrest). The district court's findings on the facts underlying the ultimate legality of the search or seizure are reviewed under the clearly erroneous standard. *See Alfonso,* 759 F.2d at 741.

### B. The Reliance on Information Supplied by Caruso

Merriweather argues that the warrant to search room 65 was invalid because it was based on information illegally obtained from Caruso. Specifically, Merriweather argues that there was no probable cause to arrest Caruso, and that the police questioned Caruso after arresting him without reading his rights. These contentions are meritless. The district court found the following facts, which Merriweather does not dispute:

At the time agents confronted Caruso, they knew that he was an associate of Merriweather's; that he was currently on parole for bank robbery; that he had recently been seen taking items from a car parked outside the motel room and that the same car was used as a getaway car in the July 19th robbery in which Merriweather was a prime suspect; and that two men answering Caruso's and Merriweather's general descriptions had just robbed a nearby bank.

These are sufficient facts for a prudent man to believe that Caruso had just committed a bank robbery, and therefore there was probable cause for Caruso's arrest. *See Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). As for the allegation that the post-arrest questioning was illegal, the district court found as a fact that Caruso was advised of and waived his rights, and Merriweather has shown no evidence at all, beyond the bare allegation in his brief, that that finding was erroneous. We therefore hold that there was no impropriety in the arrest or questioning of Caruso. Thus we need not consider whether Merriweather has standing to assert a violation of Caruso's rights that led to the search of Merriweather's room.

### C. The Initial Warrantless Search of Room 65

The government concedes that the initial warrantless search of room 65 was illegal, because it went beyond the scope of a "security check" to see if other persons were in the room. Merriweather argues that the money in the toilet tank must be suppressed because it was found during that initial illegal search, and that the illegality cannot be cured by obtaining a warrant after the fact. The government argues that the inevitable discovery exception to the exclusionary rule makes the money admissible despite the first illegal search.

Under the inevitable discovery doctrine as recently adopted by the Supreme Court, even if evidence is initially obtained by unlawful government conduct, "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means ... then the deterrence rationale [for the exclusionary rule] has so little basis that the evidence should be received." *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984). In this case, the warrant for the second search was not invalidated by the illegality of the first search, because none of the information relied on by the magistrate in issuing the warrant came from the illegal entry. *Segura v. United States,* — U.S. —, 104 S.Ct. 3380, 3391, 82 L.Ed.2d 599 (1984). Nor was the securing of the room while waiting for the warrant an unreasonable continuing seizure that invalidated the second search, given the fact that the police had probable cause to believe that evidence of a crime was within the room. *See Segura,* 104 S.Ct. at 3388–91 & n. 9 (overruling two Ninth Circuit cases to the extent that they hold to the contrary: *United States v. Lomas,* 706 F.2d 886, 893–94 (9th Cir.1983); *United States v. Allard,* 634 F.2d 1182, 1185–87 (9th Cir.1980)). Thus, the second search was lawful. The prosecution has carried its burden of proof on the factual issue of inevitable discovery by its showing that the second lawful search, which was carried out by agents ignorant of the existence and location of the money, also resulted in discovery of the money. Thus, we affirm the district court's decision to admit the money.

## II.

### THE MOTION FOR A JUDGMENT OF ACQUITTAL

■ The test for a motion for judgment of acquittal under Fed.R.Crim.P. 29(a) is the same in the district court and on appeal: the court "must determine whether, viewing the evidence in the light most favorable to the government, the jury could reasonably find the defendant guilty beyond a reasonable doubt." *United States v. Hazeem*, 679 F.2d 770, 772 (9th Cir.), *cert. denied*, 459 U.S. 848, 103 S.Ct. 106, 74 L.Ed.2d 95 (1982). Merriweather argues that there was insufficient evidence under this standard to support his convictions. As to the bank robbery counts, his contentions are meritless. He was not convicted of the July 12 robbery. As to the July 19 robbery, the physical description of the robber, the gun, and the getaway car all linked Merriweather to the robbery. As to the July 31 robbery, the physical description of the two robbers and their clothing, the gun, and the money, linked Merriweather to the robbery. The jury acted reasonably in finding Merriweather guilty.

■ As to the firearm possession counts, Merriweather contends that the inconsistency of his acquittal on the July 12 bank robbery charge and conviction on the July 12 firearm charge justified a judgment of acquittal on the firearm charge. The rule of this circuit is that "[i]nconsistent verdicts may stand, even when a conviction is rationally incompatible with an acquittal, provided there is sufficient evidence to support the guilty verdict." *United States v. Birges*, 723 F.2d 666, 673 (9th Cir.), *cert. denied*, 466 U.S. 943, 104 S.Ct. 1926, 80 L.Ed.2d 472 (1984). In this case, the July 12 firearm conviction is supported by the description of the robber and the handgun, which match Merriweather's appearance and the characteristics of a weapon later found in his possession. Viewing this evidence in the light most favorable to the government, a reasonable jury could have found that Merriweather possessed a firearm on July 12.

■ As to the July 31 shotgun possession, Merriweather argues that the only evidence connecting him with the gun was that it was found in his car. He argues that the inference of possession raised by this fact was negated by the evidence that Caruso also had access to the car, as shown by a parking ticket Caruso got while driving Merriweather's car. Although this is a close question, viewing the evidence in the light most favorable to the government, a reasonable jury could have found that Merriweather possessed the shotgun on July 31st. *See United States v. Blanton*, 520 F.2d 907, 913 (6th Cir.1975) (firearm found in car to which others had access) and *United States v. Jones*, 514 F.2d 648, 650 (5th Cir.1975) (same); *see also United States v. Apker*, 705 F.2d 293, 308–09 (8th Cir.1983) (constructive possession can be established by a showing that the firearm was seized at the defendant's residence). We therefore affirm the district court's decision on the motion for judgment of acquittal on all counts.

## III.

### THE MOTION FOR A NEW TRIAL

■ A motion for a new trial is directed to the discretion of the district court, which should grant it only in an exceptional case in which the evidence weighs heavily against the verdict. *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir.1981). Merriweather's motion for a new trial is based on the same arguments as his motion for judgment of acquittal. The only difference in analysis here, therefore, is that our review of the district court is more limited: we may reverse only for an abuse of discretion. For the reasons outlined above in the discussion of the motion for acquittal, the district court clearly did not abuse its discretion in holding that the evidence did not weigh heavily against the verdict.

### CONCLUSION

The judgment of the district court is AFFIRMED.