**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Nile SMITH, Defendant-Appellant.**

**No. 85–1164.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 15, 1986.

Decided May 30, 1986.

Leslie Osborne, Honolulu, Hawaii, for plaintiff-appellee.

Richard S. Kawana, Honolulu, Hawaii, for defendant-appellant.

Before WALLACE, FARRIS, and BOOCHEVER, Circuit Judges.

FARRIS, Circuit Judge:

On October 18, 1983, a two-count indictment was returned against appellant Nile Smith and three co-defendants, William Lynch, Jeffery Freiberg, and Donald McCoy. Count I charged that defendants had conspired to counterfeit and utter obligations of the United States in violation of 18 U.S.C. §§ 371, 471, and 472. Count II charged that defendants had made, and aided and abetted in the making of, photographs, negatives, and printing plates for use in counterfeiting in violation of 18 U.S.C. §§ 474 and 2. On the second day of trial, all four defendants withdrew their

pleas of not guilty. Smith pleaded guilty to Counts I and II. The other defendants pleaded guilty to Count I alone. Prior to sentencing, Smith withdrew his guilty plea. He was tried before a jury and convicted.

On June 3, 1985, Smith was adjudged guilty, fined and sentenced to imprisonment. Smith filed a timely notice of appeal on June 13, 1985. Fed.R.App.P. 4(b). The district court had jurisdiction pursuant to 18 U.S.C. § 3231. Jurisdiction in this court is based on 28 U.S.C. § 1291.

## A) THE WARRANTLESS ARREST

■ At approximately 2:25 p.m., September 28, 1983, Lynch and McCoy were arrested by Secret Service agents and local police at the residence they had rented on Ahikawa Street, Kona, Hawaii. Search of the house pursuant to a warrant commenced at approximately 2:45 p.m. While the house was being searched, Smith and Freiberg arrived in Smith's jeep. They approached the house, knocked on the front door, and were arrested by the Secret Service agent who answered the door. A search of Smith's person yielded six $100 bills. Photocopies of one of the bills were later found in Smith's jeep.

While a warrantless search is permissible if conducted incident to a lawful arrest, "if an arrest without a warrant is to support an incidental search, it must be made with probable cause." *Henry v. United States*, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959) (citing *Carroll v. United States*, 267 U.S. 132, 155–56, 45 S.Ct. 280, 286, 69 L.Ed. 543 (1925)). The probable cause determination is a mixed question of law and fact which is reviewed *de novo*. *United States v. Merriweather*, 777 F.2d 503, 505 (9th Cir.1985). Findings of fact on which the district court based its conclusion as to probable cause are reviewed for clear error only. *Id.*

There was ample foundation for the trial court's conclusion that the officers had probable cause to arrest Smith. The officers knew that Smith and Freiberg had travelled to California where they purchased printing supplies including presses, a numbering machine, and green and black ink. They asked numerous questions about fine-line printing. Upon their return to Hawaii, Smith and Freiberg were followed to the house on Ahikawa Street. Over a period of several days, a Secret Service agent watching the house from an adjacent lot overheard conversations suggesting that the occupants were engaged in counterfeiting.

On September 26, 1983, the agent heard Lynch tell McCoy, *inter alia:* "I am going to buy a recording studio.... I'm going to buy a gold watch, a new car.... I can't wait to start running the numbers." McCoy then made some comment about "get[ting] rid of the plates," to which Lynch responded: "No, I think we should melt them down." Lynch went on to say "that it will be easy to pass. You just have to buy some gum, pass some here and go somewhere else and pass them. You don't pass them all in one place, a couple here, a couple there. Then fly to another town and pass some more." On September 27th the agent observed all four defendants at the Ahikawa Street residence. He "heard a large vibration, humming noise, coming from the master bedroom." A voice said, "This will never do." Another responded, "I'll have to work on it." Shortly thereafter, Lynch entered the living room with what appeared to be "dark green ink on his hands and wrists." During this time, Lynch repeatedly exited and re-entered the house:

> [A]nytime [there was] a car or any noise or anything outside, he would come out, look around, surveil the area. He made many trips out the sliding door on the ocean side of the house. He would look around. Then he would go to the direction of an out building on the ocean side of the main house. And he would come back in. Every time he would come back in, he would lock the door. One time he forgot to lock the door, didn't lock the door, and defendant Smith came in the living room and locked the sliding door behind Lynch.

At approximately 3:55 p.m., Smith and Freiberg departed the residence. Upon exiting "Freiberg said back inside to Lynch and McCoy that they would get rid of this and be right back." Freiberg was carrying a brown paper bag. They left in Smith's jeep.

Our review of the record reveals that, under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that Smith had committed a crime. *See United States v. Al-Azzawy,* 784 F.2d 890, 894 (9th Cir.1985); *United States v. Gonzales,* 749 F.2d 1329, 1337 (9th Cir.1984). *See also Henry,* 361 U.S. at 102, 80 S.Ct. at 171. Smith's arrest and the search incident thereto were lawful.

## B) THE WARRANTLESS SEIZURE OF THE AUTOMOBILE

■ Immediately after Smith and Freiberg were arrested, Smith's jeep was towed to the local police station. The authorities did not have a warrant to seize the vehicle. In a statement given to a Secret Service agent at the station, Freiberg indicated that a brown paper bag containing "negatives of a hundred-dollar bill and some Xerox copies of a hundred-dollar bill" could be found in the jeep. Agents escorted Freiberg to the police parking lot where he identified the jeep and, through the window, the bag. Based on Freiberg's statement and his visual identification of the jeep and the bag, agents obtained a warrant to search Smith's jeep.

Smith's motion to suppress the copies and negatives of a $100 bill found in the ensuing search was denied. The court approved the warrantless seizure primarily on an impoundment rationale, citing *Cabbler v. Superintendent,* 528 F.2d 1142, 1146 (4th Cir.1975), *cert. denied,* 429 U.S. 817, 97 S.Ct. 60, 50 L.Ed.2d 77 (1976). The court also noted that "additional grounds for seizure arose under the criminal forfeiture laws and because of probable cause to believe contraband may still be located within the jeep." We may affirm on any ground fairly supported by the record.

*United States v. Burnette,* 698 F.2d 1038, 1048 (9th Cir.), *cert. denied,* 461 U.S. 936, 103 S.Ct. 2106, 77 L.Ed.2d 312 (1983).

We reject the government's suggestions (1) that towing the jeep to the police parking lot did not amount to a seizure within the meaning of the Fourth Amendment, *United States v. Bagley,* 772 F.2d 482, 490 (9th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1215, 89 L.Ed.2d 326 (1986); *see also Cardwell v. Lewis,* 417 U.S. 583, 592–96, 94 S.Ct. 2464, 2470–72, 41 L.Ed.2d 325 (1973) (plurality), and (2) that simply by obtaining a warrant prior to searching the jeep the agents purged the taint of the warrantless seizure. *See Bagley,* 772 F.2d at 489; *United States v. Spetz,* 721 F.2d 1457, 1473 (9th Cir.1983). Nevertheless we need not decide whether the warrantless seizure was proper under a probable cause or impoundment rationale.

Examination of the affidavit submitted in support of the warrant application reveals that probable cause to search the jeep existed independent of the information obtained as a result of the seizure. The affidavit recites that subsequent to his arrest Freiberg stated that "the negatives he produced of $100 [federal reserve notes] on 9–27–83 were taken by Nile Smith, placed in a brown paper bag, taped with brown masking tape and carried by Smith to a 1977 brown 4 wheel drive jeep vehicle bearing Hawaii License No. HBN 577." " 'When an affidavit in support of a search warrant contains information which is in part unlawfully obtained, the validity of a warrant and search depends on whether the untainted information, considered by itself, establishes probable cause for the warrant to issue.' " *United States v. Alexander,* 761 F.2d 1294, 1300 (9th Cir.1985) (quoting *James v. United States,* 418 F.2d 1150, 1151 (D.C.Cir.1969)). Under the totality of the circumstances, *see Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), the magistrate had an adequate basis for finding probable cause to search the jeep independent of allegations stemming from Freiberg's op-

portunity to view the jeep in the police parking lot.

## C) ADMISSION OF TESTIMONY CONCERNING FREIBERG'S GUILTY PLEA

■ Twice during direct examination Freiberg testified that he had pleaded guilty to the offense for which Smith was being tried. Despite his failure to object on either occasion, Smith contends that admission of this testimony requires reversal.

Freiberg's first reference to the guilty plea was not evoked intentionally by the prosecutor. It prompted no limiting instruction from the trial court. Freiberg's second reference to his guilty plea came in response to a direct question from the prosecutor. The court immediately delivered a limiting instruction:

All right. Those last three questions, ladies and gentlemen, was exactly what I had forewarned the jury about with respect to anything that affects this defendant's guilt should in no way be used and held against Mr. Smith. The fact that both of them were charged as part of the conspiracy and that if he pled out as his admission to his guilt should not be viewed—that fact alone should not be viewed as an indication of the guilt or innocence of Mr. Smith, but the rest of his testimony, as adduced, may be considered by you for the purpose of guilt or innocence.

The admissibility of evidence concerning a co-defendant's guilty plea "turns on the purpose for which it is offered." *United States v. Halbert*, 640 F.2d 1000, 1004 (9th Cir.1981) (per curiam). While evidence of a co-defendant's guilty plea "may not be offered by the government and received over objection as substantive evidence of the guilt of those on trial," *id.*, "[t]his and other circuits have consistently recognized that, under proper instruction, evidence of a guilty plea may be elicited by the prosecutor on direct examination so that the jury may assess the credibility of the witnesses the government asks them to believe." *Id.* "[E]vidence of the plea is relevant to credi-bility regardless whether government or defendant initiates inquiry about it." *Id.*

[W]hen the prosecution examines the co-defendant as its witness in support of its case-in-chief, a question about the guilty plea is legitimate as the purpose is to support the reasonableness of the witness' claim to firsthand knowledge because of admitted participation in the very conduct which is relevant. The fact a witness has formally admitted personal responsibility enhances the circumstances adding up to that witness' believability.

*Id.* at 1005.

Even where the government's use of a co-defendant's guilty plea is permissible, the trial court is obliged to deliver "adequate cautionary instructions that make it clear to lay people that evidence of a witness' own guilty plea can be used only to assess credibility." *Id.* at 1006. At the very least, the jury "should be told in unequivocal language that the plea may not be considered as evidence of a defendant's guilt." *Id.* at 1007.

Smith neither entered a contemporaneous objection to admission of Freiberg's testimony, nor complained of the inadequacy of the limiting instruction. He failed to request that an additional instruction be given as part of the charge. Consequently, the trial judge was not given an opportunity to cure any defect in the instruction.

■ Errors not brought to the attention of the trial court will be noticed on appeal only if "particularly egregious." *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982); Fed.R.Crim.P. 52(b). Thus, in the absence of timely objection, only those errors that " 'seriously affect the fairness, integrity or public reputation of judicial proceedings' " will be corrected by this court. *United States v. Young*, — U.S. —, 105 S.Ct. 1038, 1046–47, 84 L.Ed.2d 1 (1985) (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)). Here, there is no indication that testimony concerning Freiberg's guilty plea was elicit-

ed for an improper purpose. Nor did counsel unduly emphasize the plea. Even if the instruction was inadequate, the error was not so plain that "the trial judge and prosecutor were derelict in countenancing it." *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982). We therefore need not decide whether the instruction met the standard described in *Halbert*. *See United States v. DeLucca*, 630 F.2d 294, 299 (5th Cir.1980) ("Only in those rare situations in which other 'aggravating circumstances' have exacerbated the prejudice will the failure to give cautionary instructions result in plain and reversible error."), *cert. denied*, 450 U.S. 983, 101 S.Ct. 1520, 67 L.Ed.2d 819 (1981). *See also United States v. Christian*, 786 F.2d 203, 210 (6th Cir.1986); *United States v. Davis*, 766 F.2d 1452, 1456 (10th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 239, 88 L.Ed.2d 240 (1985); *United States v. Ojukwa*, 712 F.2d 1192, 1193–94 (7th Cir.1983). *But see United States v. Austin*, 786 F.2d 986, 990–91 (10th Cir.1986); *United States v. Alanis*, 611 F.2d 123 (5th Cir.), *cert. denied*, 445 U.S. 955, 100 S.Ct. 1607, 63 L.Ed.2d 791 (1980).

### D) OTHER ASSIGNMENTS OF ERROR

1) *Admission of Statements by Co-Conspirators*

■ Smith contends that the trial court erred in admitting the testimony of Freiberg, Lynch, and McCoy over his repeated hearsay objections. He asserts that there was insufficient evidence of the existence of a conspiracy, independent of the challenged "hearsay" statements, to warrant invocation of the co-conspirator statement exception to the hearsay rule. Fed.R. Evid. 801(d)(2)(E). Whether there has been the prima facie showing of conspiracy necessary for the introduction of co-conspirator hearsay statements is a question of law subject to *de novo* review. *United States v. Rosales*, 584 F.2d 870, 872 (9th Cir.1978).

The vast majority of the statements of which Smith complains are not hearsay regardless of the operation of Fed.R.Evid. 801(d)(2)(E). Rule 801(d)(2)(E) is an excep-

tion to the hearsay rule, not a requirement for the admission of non-hearsay statements by co-conspirators. *See e.g., United States v. Hackett*, 638 F.2d 1179, 1186 (9th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981); *United States v. Fried*, 576 F.2d 787, 792–93 (9th Cir.), *cert. denied*, 439 U.S. 895, 99 S.Ct. 255, 58 L.Ed.2d 241 (1978). The bulk of the remaining statements were unquestionably made "during the course and in furtherance of" a conspiracy the existence of which was established by independent evidence—including the admissible nonhearsay testimony of Smith's co-conspirators.

■ The district court's conclusion that a challenged statement was made during the course and in furtherance of a conspiracy is upheld on review unless clearly erroneous. *United States v. Moody*, 778 F.2d 1380, 1382 (9th Cir.1985); *United States v. Silverman*, 771 F.2d 1193, 1199 (9th Cir.1985). The conversation between Lynch and McCoy, testified to by Agent Davidson, occurred during the course of and furthered the conspiracy, at least to the extent it pertained to destruction of plates and passing counterfeit bills.

> We have, on many occasions, sought to define the "in furtherance of" requirement. We have stated that "mere conversations between co-conspirators" or "merely narrative declarations" are not admissible as statements in furtherance of a conspiracy.... Instead, the statements must "further the common objectives of the conspiracy," or "set in motion transactions that [are] an integral part of the [conspiracy]." ... In short, they must assist the conspirators in achieving their objectives.

*United States v. Layton*, 720 F.2d 548, 556 (9th Cir.1983) (citations omitted), *cert. denied*, 465 U.S. 1069, 104 S.Ct. 1423, 79 L.Ed.2d 748 (1984). To the extent the conversation pertained to Lynch's personal dreams, its admission, if erroneous, was certainly harmless. Fed.R.Crim.P. 52(a).

■ While it is often difficult to ascertain when a conspiracy begins and ends, a

statement made by one co-conspirator to induce another to join the conspiracy surely was made during the course and in furtherance of the conspiracy. *Layton,* 720 F.2d at 556 ("statements designed to induce a listener to join a conspiracy are admissible"). Thus Freiberg's testimony that Lynch told him that Smith "needed somebody that wanted to counterfeit money," ER 48, was properly admitted. No "firm and definite conviction of mistake," *Silverman,* 771 F.2d at 1199, arises from review of this record.

### 2) *Instruction on Multiple Conspiracies*

■ To establish the existence of a single conspiracy, as distinguished from multiple conspiracies, "the basic 'test is whether there was one overall agreement to perform various functions to achieve the objectives of the conspiracy.'" *United States v. Arbelaez,* 719 F.2d 1453, 1457 (9th Cir. 1983) (quoting *United States v. Zemek,* 634 F.2d 1159, 1167 (9th Cir.1980), *cert. denied,* 452 U.S. 905, 101 S.Ct. 3031, 69 L.Ed.2d 406 (1981), 450 U.S. 985 (1981), *and* 450 U.S. 916, 101 S.Ct. 1359, 67 L.Ed.2d 341 (1981)), *cert. denied,* 467 U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984). Smith "confuses *separate acts at separate times* with *separate conspiracies.*" *United States v. Kearney,* 560 F.2d 1358, 1362 (9th Cir.) (emphasis in original), *cert. denied,* 434 U.S. 971, 98 S.Ct. 522, 54 L.Ed.2d 460 (1977). The evidence does not support a multiple conspiracy theory. The district court did not err in refusing to give Smith's requested multiple-conspiracy instruction. *See United States v. Rabb,* 752 F.2d 1320, 1325 (9th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2027, 85 L.Ed.2d 308 (1985).

### 3) *Motion for Mistrial Based on Prejudicial Publicity*

■ On May 16, 1985 an article appeared on page A–24 of the Honolulu *Star-Bulletin* under the headline: "Alleged Member of Counterfeiting Plot Goes on Trial After Changing His Plea." On May 21, 1985 defense counsel brought the publication of this article to the court's attention. At counsel's insistence, the court agreed to voir dire the members of the jury as to whether they had read the article. The trial judge stated that he intended to question alone and in camera any juror who responded in the affirmative. Three jurors and one alternate admitted having read the headline, but all denied having read the article. The four assured the court that despite having read the headline they could "sit as fair and impartial" jurors. Defense counsel moved for a mistrial. The motion was denied. Smith contends the denial of this motion constituted an abuse of discretion.

When the possibility of prejudice arises during trial, the trial judge "has the affirmative duty ... to take positive action to ascertain the existence of improper influence on the jurors' deliberative qualifications and to take whatever steps are necessary to diminish or eradicate such improprieties." *Silverthorne v. United States,* 400 F.2d 627, 643 (9th Cir.1968). "[T]he trial judge's delicate estimation of the needs of the case of which he has firsthand experience" will be upheld on appeal unless the judge "has clearly abused his discretion." *United States v. Polizzi,* 500 F.2d 856, 881 (9th Cir.1974), *cert. denied,* 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975).

The facts of this case would not support a finding that "the probability of prejudice arose and was not eliminated." *Silverthorne,* 400 F.2d at 644. The procedure followed by the district judge was entirely adequate under the circumstances. *See United States v. Giese,* 597 F.2d 1170, 1183 (9th Cir.), *cert. denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979). The trial court did not abuse its discretion. *See, e.g., United States v. Ferreboeuf,* 632 F.2d 832, 834 (9th Cir.1980), *cert. denied,* 450 U.S. 934, 101 S.Ct. 1398, 67 L.Ed.2d 368 (1981); *Giese,* 597 F.2d at 1183–84; *Polizzi,* 500 F.2d at 880–87.

### 4) *Sufficiency of the Evidence*

■ In reviewing the sufficiency of the evidence to support a conviction, we must

determine whether, viewing the evidence and all inferences reasonably drawn from the evidence in the light most favorable to the government, any rational trier of fact could have found all essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Hale*, 784 F.2d 1465, 1470 (9th Cir.1986). The evidence of Smith's guilt, including the unequivocal testimony of his co-conspirators, is not only sufficient, but overwhelming.

### 5) *Evidence Excluded*

█ Smith contends that certain exhibits offered in support of his contention that he intended to establish a legitimate printing business were erroneously denied admission into evidence. The trial court's evidentiary rulings are reviewed for abuse of discretion. *United States v. Rohrer*, 708 F.2d 429, 432 (9th Cir.1983). Viewing the evidentiary rulings in the context of the trial as a whole, we do not have a firm and definite conviction that the trial judge committed a clear error of judgment. *Potlatch Corp. v. United States*, 679 F.2d 153, 157 (9th Cir.1982). In any case, no error of less than constitutional proportion requires reversal where, as here, the evidence of defendant's guilt is overwhelming. *See United States v. Ortiz*, 776 F.2d 864, 865 (9th Cir.1985) (per curiam); *United States v. Rohrer*, 708 F.2d 429, 432 (9th Cir.1983).

### 6) *Denial of Continuance*

█ Smith contends that the trial court improperly denied his eleventh-hour motion for continuance. We "will not reverse the district court's denial of a continuance absent a clear abuse of discretion." *United States v. Sterling*, 742 F.2d 521, 527 (9th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 2322, 85 L.Ed.2d 840 (1985).

When a continuance is requested to obtain witnesses, the accused must show who they are, what their testimony will

be, that the testimony will be competent and relevant, that the witnesses can probably be obtained if the continuance is granted and that due diligence has been used to obtain their attendance on the date set for trial.

*Id.* Smith's offer of proof fell far short of the requirements set out in *Sterling. See also United States v. Hoyos*, 573 F.2d 1111, 1114 (9th Cir.1978).

AFFIRMED.