953 F.2d 1389
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Virgilio LAYUG, Defendant-Appellant.
 No. 90-50635.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 6, 1992.*
Decided Jan. 17, 1992.
 
 Before FARRIS, NOONAN and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Virgilio Layug appeals his jury-trial conviction of three related offenses: conspiracy to possess with intent to distribute marijuana (21 U.S.C. § 841(a)(1)), importation of marijuana (21 U.S.C. § 952(a)) and possession of marijuana with intent to distribute (21 U.S.C. § 841(a)(1)). We have jurisdiction under 28 U.S.C. § 1291. We affirm.
 
 The Case
 
 3
 Layug was president of the Budji Corporation, which imported furniture from the Philippines. On October 16, 1989, customs officials discovered that a furniture container, sent to Budji by a furniture company owned by Layug's family in the Philippines, contained 23 crates of marijuana. The officials kept track of the container as it went to Budji. When it arrived, Layug supervised the unloading of the marijuana crates, from the container, although he rarely involved himself in container unloading and on that day did not involve himself in unloading the furniture. Another employee (a government informant) then talked briefly with Layug and directed that the crates be loaded onto a truck. At the informant's direction, an undercover officer posing as a day laborer drove one of the trucks to a storage facility. The crates were transferred to the storage unit. The drugs were eventually loaded onto a second truck and transferred to two new storage facilities.
 
 
 4
 Meanwhile, the informant telephoned Layug, with the police recording the call. The conversation was nominally about cars, but at trial an officer testified that the informant--who was unavailable to testify--had told him that "cars" meant "drugs." He also testified that drug traffickers frequently referred to drugs as "cars". Layug stated in the conversation that the cars had arrived and discussed their price.
 
 
 5
 The police finally arrested two of the conspirators while they were unloading the marijuana at the second storage facility. At the same time, the police searched the storage facilities and seized the marijuana. On one of the arrestees, Jay Rosser, they found a directory with telephone numbers for Budji Corporation, including a number for "Bong", Layug's nickname. A third conspirator was arrested at a hotel; telephone records from his room show calls to Layug's residence or Budji Corporation on October 15, 16, 17 and 19, 1989. Layug was arrested at Budji Corporation, about ten feet outside his office, on October 19, 1989. One of the arresting officers, Robert Baker, entered Layug's office after Layug had told him that the keys to Layug's automobile, which Baker planned to seize, were there. Baker noticed several items on Layug's desk, including an appointment book, a planning diary and a telephone book. Baker brought them to Layug and asked Layug if he wanted to bring them with him; Layug said he did. The items were never given to Layug but were booked into evidence.
 
 The arguments
 
 6
 Layug first challenges the admission of the items taken from his desk upon his arrest. The police had no warrant when they took the items. His argument that the items should have been suppressed fails, however, for two independent reasons. First, simply picking up the items and carrying them to Layug did not "meaningfully interfere" with Layug's possessory interest in the items and hence was not a search or seizure. Arizona v. Hicks, 480 U.S. 321, 324-25 (1987); United States v. Brown, 884 F.2d 1309, 1311 (9th Cir.1989).
 
 
 7
 Second, the search comes under the independent-discovery exception to the exclusionary rule. Evidence obtained in violation of the warrant requirement is admissible if the police would inevitably have discovered it through independent lawful means. Nix v. Williams, 467 U.S. 431, 441-48 (1984). Other evidence would have led the police to the items on the desk. The coconspirators' telephone directories, for example, linked Budji Corporation's premises and Layug to the transaction. The marijuana had arrived at Budji. Budji Corporation and Layug were clearly at the center of the scheme. The police would surely have sought a warrant to search Budji Corporation, and Layug's office particularly, for fruits and instrumentalities of the crime, including records. They would have found the materials then.[1]
 
 
 8
 Layug argues that the officers would not have had probable cause to obtain a warrant to search for the items seized, and therefore could not have seized the items independently. Yet clearly they did have probable cause for a warrant naming the office as the place to be searched; after the shipment of marijuana to Budji, there would certainly have been "reasonable ground to believe," United States v. Terry, 911 F.2d 272, 275 (9th Cir.1990), that evidence might be found on the company's premises and in Layug's office. Likewise, they would have had probable cause to name records of business dealings and personal contacts, relating to the importation of the 23 crates, as the things to be seized. Such a warrant would be valid. See Andresen v. Maryland, 427 U.S. 463, 480-82 (1976) (approving "fruits, instrumentalities and evidence at this [time] unknown" as sufficiently specific when restricted to a specific, known crime). Layug is incorrect in arguing that the independent investigation and warrant application must predate the warrantless seizure. United States v. Ramirez-Sandoval, 872 F.2d 1392, 1399 (9th Cir.1989). The court properly admitted the items on the desk.
 
 
 9
 Layug next makes various objections to the district court's refusal to allow him to prove his own standing to object to the officers' search of the two storage units and the rental truck. We need not decide this issue. If the searches were valid, even an improper denial of standing would have been harmless. Both searches were valid. First, the valid consent of a third party with joint access to or control over property renders a warrant unnecessary when the police search the property. United States v. Matlock, 415 U.S. 164, 171 (1974); United States v. Yarbrough, 852 F.2d 1522, 1533-34 (9th Cir., cert. denied, 488 U.S. 866 (1988). Layug's codefendant, Rosser, consented to the search of the A-V storage unit. Rosser had earlier delivered the marijuana to the storage unit, and so had apparent authority over both the unit and the marijuana. The A-V search was therefore valid. Second, when Nassr and Rosser were arrested, Nassr was in the back of the U-Haul truck and Rosser was in the All American storage unit. The police could lawfully search the truck and the storage unit, both of which immediately adjoined the locations of the arrests, to ensure their own safety. Maryland v. Buie, 110 S.Ct. 1093, 1098 (1990). Layug does not argue that the searches were not incident to arrest. We conclude that they were. If the court erred in assessing his Fourth Amendment standing the error was therefore harmless.
 
 
 10
 Layug also claims that the district court erred in replacing a trial juror with the second alternate juror rather than the first alternate. After the court had called two prospective alternate jurors, Layug used his sole peremptory challenge to remove the one first called, leaving an alternate named King. When the court called a new alternate, Altaffer, it seated her as first alternate and left King as second. They were sworn in at the same time. Altaffer remained first during the trial. When a juror was excused, Altaffer rather than King was seated over Layug's objection.
 
 
 11
 Federal Rule of Criminal Procedure 24(c) requires that alternates be seated as jurors in the order in which they are called. Seating Altaffer rather than King as a substitute juror violated the rule. The question is therefore whether the error was harmless. Layug offers two reasons why it was not. First, he argues that he could only exercise his peremptory challenge intelligently if he knew which alternate was more likely to replace an excused juror. This argument, however, is speculative at best: had he known Altaffer would be next, Layug might not have exercised his peremptory challenge on the first alternate, and the first alternate might have favored him. Second, Layug observes that when King, the alternate who should have been seated first, participated in deliberations as to codefendant Estrada, the jury deadlocked. From this fact he infers that King would have caused a deadlock as to him. This argument, too, is speculative. Where only two defendants were tried together on only three counts, we may reasonably assume that the jurors considered the evidence separately as to each defendant. The fact that the jury including King deadlocked as to the codefendant tells us little about what it would have done as to Layug. In sum, where there is no argument that the alternate who actually served was biased or in any way unqualified, Layug's speculation does not establish a violation of his "substantial rights." Fed.R.Crim.P. 52(a). Cf. Heath v. Cast, 813 F.2d 254 (9th Cir.), cert. denied, 484 U.S. 849 (1987) (similar violation of comparable Rule of Civil Procedure harmless where, as here, alternate eventually substituted was always treated as first alternate after swearing-in).
 
 
 12
 Layug next argues that the evidence was insufficient to support his conviction. It was sufficient if a rational juror, indulging all reasonable inferences in the government's favor, could have found all of the elements of the crimes beyond a reasonable doubt. United States v. Terry, 911 F.2d 272, 278 (9th Cir.1990). As to the substantive importation count, he argues there was no evidence that he knew the crates contained marijuana. The jury could, however, have inferred knowledge from his unusual interest in the crates and from his discussion with the informant of the drugs' arrival and price and from the documents on his desk connecting him to the conspiracy.
 
 
 13
 As to the conspiracy, he argues that his connection to it was not established. However, once the conspiracy is proved, the government need only present evidence of a slight connection to it. United States v. Stauffer, 922 F.2d 508, 514-15 (9th Cir.1990). His unusual interest in the crates, the taped conversation, the items found on his desk, and evidence of telephone calls placed to him by codefendants all connected him to the conspiracy.
 
 
 14
 As to possession with intent to distribute, Layug argues that the government never proved that he possessed the marijuana or that he intended to distribute it. Again, his argument falls short. He is vicariously guilty of possession. His codefendants possessed marijuana, for example when loading and unloading it. Their possession was a reasonably foreseeable consequence of the agreement to import it, was within the scope of the project and was in furtherance of the conspiracy to import, so he is vicariously liable for possession. United States v. Thomas, 887 F.2d 1341, 1345 (9th Cir.1989). His intent to distribute was sufficiently established by the size of the load: 1772 kilograms. United States v. Humphrey, 759 F.2d 743, 750 (9th Cir.1985), cert. denied, 480 U.S. 917 (1987).
 
 
 15
 Layug finally argues, under two different theories, that the court erred in admitting the taped conversation between him and the informant. First he argues that the tape was not sufficiently authenticated. No witness who testified at trial understood the Tagalog language in which the conversation had taken place, so Layug argues no one sufficiently verified that the tape accurately reflected the conversation. In addition, he argues that no witness sufficiently identified Layug as the person to whom the informant was speaking.
 
 
 16
 Evidence has been sufficiently authenticated if a reasonable juror could find that it was authentic; the court's decision that it has been sufficiently authenticated is reviewed for abuse of discretion. Fed.R.Evid. 901(a); United States v. Blackwood, 878 F.2d 1200, 1202 (9th Cir.1989). The court did not abuse its discretion. The officer who recorded it testified that the tape recorder had been functioning properly shortly before and during the conversation. The recorder accurately reflected the informant's end of the conversation, what the officer himself said after the end of the conversation, and the small bits of Layug's end that the officer heard. In the absence of evidence even hinting that the recording was not accurate, this much suffices to allow a reasonable juror to conclude it was accurate. The government need not show that the officer understood the conversation. United States v. Rengifo, 789 F.2d 975, 978-79 (1st Cir.1986). Likewise, a reasonable juror could find it was Layug who was on the other end of the informant's conversation. The officer testified that he himself dialed the number for Budji Corporation himself and that the informant had asked for "Bong." His interlocutor identified himself as "Bong." "Bong" was Layug's nickname. This much sufficed. Fed.R.Evid. 901(b)(6)(A).
 
 
 17
 Layug also argues that admission of the tape violated his right to confront witnesses under the Sixth Amendment. He waived this argument by failing to raise it below.
 
 
 18
 The judgment of conviction is AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Fed.R.App.P. 34(a) and Ninth Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The district court filed findings of fact and conclusions of law, supporting its denial of the motion to suppress, two days after Layug filed his notice of appeal. The parties dispute whether we may rely on those findings. Whether or not we could properly rely on them, we do not do so because the record is sufficiently clear without them. This court may affirm on any ground finding support in the record. United States v. Smith, 790 F.2d 789, 792 (9th Cir.1986)