NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

APR 28 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| THE ESTATE OF PAUL SILVA, by and through its successors-in-interest Leslie Allen and Manuel Silva; et al., | No. 23-55559 |
| Plaintiffs-Appellees, | D.C. No. 3:18-cv-02282-L-MSB |
| v. | |
| ANDREW MURROW, in his individual capacity; LOUIS MAGGI, | MEMORANDUM* |
| Defendants-Appellants, | |
| and | |
| CITY OF SAN DIEGO; et al., | |
| Defendants. | |

Appeal from the United States District Court
for the Southern District of California
M. James Lorenz, District Judge, Presiding

Argued and Submitted December 6, 2024
Pasadena, California

Before: BEA, LEE, and KOH, Circuit Judges.
Partial Dissent by Judge KOH.

Officer Andrew Murrow and Sergeant Louis Maggi appeal from the district

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

court's order denying them qualified immunity on summary judgment. Although orders denying a motion for summary judgment are typically not immediately appealable under 28 U.S.C. § 1291, denials of qualified immunity are immediately reviewable "under the collateral order exception to finality." *Ballou v. McElvain*, 29 F.4th 413, 421 (9th Cir. 2022). We reverse and remand.

On February 20, 2018, Leslie Allen called the San Diego Police Department multiple times to request assistance because she was concerned that her son Paul Silva—a 39-year-old man diagnosed with schizophrenia—was having a mental health emergency. Officer Murrow, Sergent Maggi, and a third officer, Officer Derisio, responded to the call.

When the officers arrived, Silva volunteered to officers that he had a marijuana pipe on him. But he denied drug use and claimed that the last time he used methamphetamine was four years ago. Sergeant Murrow, however, believed that Silva was under the influence of drugs because Officer Maggi told him that there was "recent use." There were other signs consistent with drug use. Sergeant Murrow recorded Silva's pulse at 114 beats per minute, which may suggest drug use. Silva also failed the 30-second Romberg test, a symptom potentially indicative of drug use.

On the other hand, some of the symptoms of drug use can also indicate schizophrenia. Further, Silva had a horizontal gaze nystagmus of 45 degrees in both

2

eyes, which the appellees' expert claimed is a symptom of schizophrenia. And Silva's mother had reported that Silva was schizophrenic and might be off his medication.

Officer Murrow ultimately decided—with Maggi's agreement—to arrest Silva for being under the influence of a controlled substance. Tragically, Silva later died while in custody.

1. We have jurisdiction over this interlocutory appeal. Appellees argue that the officers waived jurisdiction of their appeal because they premised their legal arguments on a factual recitation that contradicts the specific findings of the district court. But the officers' "defense-friendly presentation of the facts does not deprive us of jurisdiction. Although [the officers'] appellate briefing arguably lapsed into disputing plaintiffs' version of the facts, we are fully capable of distinguishing between advocacy and the record itself. [The officers'] characterization of the facts did not result in waiver of [their] qualified-immunity defense." *Est. of Aguirre v. Cnty. of Riverside*, 29 F.4th 624, 627 (9th Cir. 2022) (cleaned up). Further, in their Reply Brief, the officers acknowledge that only legal questions are appropriate for review.

2. The district court erred in denying Officer Murrow and Sergeant Maggi qualified immunity. This court reviews de novo a district court's decision on qualified immunity. *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1067 (9th

Cir. 2012). If there are disputed issues of material fact, we limit our review to whether the defendant would receive qualified immunity, "assuming all factual disputes are resolved, and all reasonable inferences are drawn, in plaintiff's favor." *Id.* at 1068.

An official sued under 42 U.S.C § 1983 is entitled to qualified immunity unless it is shown that: (1) the official violated a statutory or constitutional right, and (2) the right was "clearly established" at the time the violation occurred. *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014). "In the context of an unlawful arrest, then, the two prongs of the qualified immunity analysis can be summarized as: (1) whether there was probable cause for the arrest; and (2) whether it is *reasonably arguable* that there was probable cause for arrest—that is, whether reasonable officers could disagree as to the legality of the arrest such that the arresting officer is entitled to qualified immunity." *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir. 2011). Probable cause to arrest exists when, "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the arrestee] had committed a crime." *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986).

Here, "it is *reasonably arguable* that there was probable cause for arrest—that is . . . reasonable officers could disagree as to the legality of the arrest." *Rosenbaum*, 663 F.3d at 1076. At the scene, Sergeant Murrow was told there had been "recent

4

use." He also observed evidence that was consistent with drug use. On the other hand, there were other signs suggesting schizophrenia. Faced with conflicting symptoms, Sergeant Murrow may have been mistaken in believing that Silva was under the influence of drugs, but the evidence viewed in the light most favorable to appellees does not prove that any such mistake was objectively unreasonable. There is no clearly established law holding law enforcement officers liable for the failure to make a correct medical judgment amid conflicting signs. Appellees have not pointed to any factually analogous cases. To the contrary, we have found qualified immunity even when officers are faced with conflicting evidence about whether probable cause exists, because "law enforcement officers do not have to rule out the possibility of innocent behavior" before executing an arrest. *See, e.g., Ramirez v. City of Buena Park*, 560 F.3d 1012, 1023–1024 (9th Cir. 2009) (citation omitted).

In short, a reasonable officer could conclude, under the totality of these circumstances, that "there was a fair probability that [Silva] had committed a crime." *Smith*, 790 F.2d at 792. The district court therefore erred in denying qualified immunity to Murrow and Maggi.

**REVERSED and REMANDED.**

5

*The Estate of Paul Silva, et al., v. Andrew Murrow, et al.*, No. 23-55559

KOH, J., dissenting in part:

Viewing the facts in the light most favorable to Paul Silva ("Silva"), as we must on a motion for summary judgment, the district court correctly denied qualified immunity to Officer Murrow and Sergeant Maggi because there is a genuine dispute as to whether the officers arrested Silva without probable cause, and because the officers violated clearly established law by ignoring copious amounts of evidence that negated probable cause. I respectfully dissent.[1]

On February 20, 2018, Leslie Allen ("Allen") called 911 to request the Psychiatric Emergency Response Team ("PERT") for her 39 year old son Silva. Allen told police that Silva is "schizophrenic" and was behaving erratically by "running around all night," "kicking cars," "going in people's yards," and "screaming and hollering." Allen requested that PERT take Silva to the hospital because Silva was off his medications and needed help. In previous psychiatric emergencies, Allen knew PERT had responded and taken Silva to the hospital. Allen warned that Silva would be scared of police and clarified that he did not have any weapons, had not been drinking, and had not taken any drugs.

The San Diego Police Department's 911 dispatch log reported Allen's call as a "5150 – Mental Case" and further noted that Silva was "diagnosed schizophrenic,

---

[1] I agree with the majority that we have jurisdiction over this interlocutory appeal.

1

should be on meds, but [Allen] thinks he is off them," and was not drunk in public or under the influence of drugs. "5150 – Mental Case" refers to California Welfare & Institutions Code § 5150, which allows police to take a mentally ill person into custody for 72 hours "for assessment, evaluation, and crisis intervention, or placement for evaluation and treatment" if the person "is a danger to others, or to themselves, or gravely disabled."

Due to the holiday weekend, PERT did not respond, so Allen again called 911 to report Silva was "schizophrenic," "off his medication," and needed to be "taken to the hospital." Following three more hours without a response, Allen again called 911 saying her son was "having a schizophrenic episode" and needed "to be taken to the hospital." Finally, Officer Murrow, Officer Derisio, and Sergeant Maggi, among others, responded to the scene.

Upon arriving, Officer Murrow and Sergeant Maggi found Silva wearing two jackets, a small women's leopard-print sweater, and carrying bags of garbage. Silva's appearance was inconsistent with methamphetamine use as he looked overweight with clear skin and normal teeth. Silva told the officers that he was not on drugs, but had a marijuana pipe on him. In his declaration in support of summary judgment, Officer Murrow stated that he detained Silva in part because Silva admitted to possessing a marijuana pipe. However, as the district court correctly noted, under California law, possession of a marijuana pipe is not a crime

2

and a marijuana pipe does not constitute drug paraphernalia.  The officers notably omit the possession of the marijuana pipe on appeal.

Officer Murrow then observed Silva was sweating, had bad body odor and breath, and appeared unkempt.  These symptoms can be attributed to Silva's schizophrenic episode, wearing two coats and a sweater in warm weather, running around all night without sleep, and fearing police.  While interacting with the officers, Silva was quiet, calm, and cooperative, but often spoke illogically.  Silva said that he was trying to get a ride to the library to return a book, requested the officers issue his mother a ticket for not listening to him, and explained that he put a broken glass bottle in his front pocket because he wanted to recycle the bottle, but the recycling plant had closed.  Silva told Sergeant Maggi that he was not on his medication because his father had it.  Silva repeatedly said that he was not on drugs.

Officer Murrow then performed various field sobriety tests.  Three of these tests contradicted methamphetamine use.  First, a symptom of methamphetamine use is eye flutter, but Silva had none.  Second, Officer Murrow found nystagmus prior to 45 degrees in both eyes, which is not a symptom of methamphetamine use, but is a symptom of schizophrenia.  Finally, methamphetamine use typically produces dilated pupils, but Silva's pupils were constricted.

The other field sobriety tests can be explained by Silva's mental health crisis. Officer Murrow asked Silva to close his eyes and estimate 30 seconds. Although Silva counted 30 seconds in approximately four-to-five seconds, schizophrenic individuals have a distorted sense of time. Officer Murrow measured Silva's pulse at 114 beats per minute, which could be explained by his reported running around all night without sleep and his fear of police. When asked when he had last taken methamphetamines, Silva said four years ago, but reiterated that he was not on methamphetamines now. Officer Derisio told Sergeant Maggi that Allen told him Silva had recently used methamphetamines. However, the officers did not know what recent meant, and both Silva and Allen had denied Silva was on drugs that day or night.

Despite evidence to the contrary, the officers arrested Silva for being under the influence of methamphetamines. As a final sign of his mental illness, Silva expressed grave concerns over his garbage bags before being driven away. Tragically, Silva died due to conduct of San Diego County Jail personnel.

Taking the facts in the light most favorable to Silva as required on a motion for summary judgment, the district court correctly found there was "considerable evidence that Silva was experiencing a psychotic break due to his untreated schizophrenia," and only "sparse and unreliable evidence that Silva was on methamphetamine." The majority correctly notes that "probable cause does not

4

require officers to rule out a suspect's innocent explanation for suspicious facts." *D.C. v. Wesby*, 583 U.S. 48, 61 (2018). However, the majority ignores U.S. Supreme Court law holding that probable cause requires officers to "consider[] all of the surrounding circumstances, *including the plausibility of the explanation itself*[.]" *Id*. (emphasis added). When determining probable cause, officers violate a clearly established right by ignoring exculpatory facts and explanations that negate probable cause. *See United States v. Lopez*, 482 F.3d 1067, 1073 (9th Cir. 2007) (finding an arrest is illegal despite initial probable cause if there is additional information negating probable cause); *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986) (probable cause is determined "under the totality of circumstances known to the arresting officers").

Viewing the facts in the light most favorable to Silva, the officers do not satisfy the requirements for qualified immunity. First, there is a genuine dispute of material fact as to whether the officers arrested Silva without probable cause. Second, in doing so, the officers violated a clearly established right by ignoring the large amount of evidence and innocent explanations negating probable cause. The district court properly denied qualified immunity, and this case should be decided by a jury.