Herbert W. CABBLER, Appellee,

v.

SUPERINTENDENT, VIRGINIA STATE PENITENTIARY, Appellant.

No. 74–1555.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 7, 1975.

Decided Dec. 8, 1975.

Gilbert W. Haith, Asst. Atty. Gen. of Va. (Andrew P. Miller, Atty. Gen. of Va., on brief), for appellant.

William K. Lambie, Jr., Associate Executive Director, Frank G. Carrington, Executive Director, Wayne W. Schmidt, Evanston, Ill., and Harrison Mann, Washington, D. C., on brief for amicus curiae Americans for Effective Law Enforcement, Inc., and the Va. Chapter of Americans for Effective Law Enforcement, Inc.

JeRoyd X. Greene, Jr., Richmond, Va. (Greene & Poindexter, Inc., Richmond, Va., on brief), for appellee.

Before CRAVEN, FIELD and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

The petitioner Cabbler, a prisoner of the Commonwealth of Virginia, sought habeas corpus relief under 28 U.S.C. § 2254 from his convictions of grand larceny and petty larceny in the Virginia courts, alleging that evidence was admitted in his trial which had been seized from his automobile in violation of the Fourth Amendment. Based on the state record, the district court found for the petitioner, 374 F.Supp. 690 (E.D.Va. 1974), and issued the writ. From this order the Commonwealth appeals. We reverse.

Early in the morning of September 2, 1969, Cabbler was being sought by the

Roanoke police in connection with a shooting incident. The police saw Cabbler's car and followed it to a Roanoke hospital. Cabbler, who was driving the car, parked it in the driveway leading to the emergency room around 1:20 a. m. and went into the emergency room. Based on telephone information that a warrant had been issued for Cabbler's arrest for a felony (shooting into an occupied dwelling), a Sergeant Reynolds of the Roanoke police entered the hospital and arrested him in the emergency room. Cabbler was searched, his car keys were taken, and then returned to him, and he was handcuffed. While he was being placed in the police car, he gave the car keys to the officers and asked them to roll up the windows of his car.[1] As the officers complied with his request, they picked up a pistol in the back seat of the car,[2] which they then seized. Leaving an officer to guard the car, Sergeant Reynolds took Cabbler to the police station and placed him in custody of other officers. Reynolds then returned to the scene and drove Cabbler's car to the police station. After closing the windows, Reynolds had advised Cabbler that the car would be removed to the city garage for safekeeping, to which Cabbler did not protest, although Cabbler later testified that he had told the police to leave his car there as he had made arrangements to have it picked up.

Sergeant Reynolds testified that he had impounded the car to keep it safe until Cabbler was released. He testified that even if he had heard Cabbler say that someone was coming to get the car, he still would have impounded it, for he considered himself responsible for the safekeeping of the car and its contents after arresting Cabbler. There was a long standing police department policy to take into custody for safekeeping the automobile of a person arrested away from home, and to remove and inventory its contents to protect against theft or loss of property from the stored car and also to protect the city against false claims of loss.[3]

Pursuant to this policy, Sergeant Reynolds opened the trunk of the car, removed numerous items of personal property, and tagged them. They were turned over in the morning to the officer in charge of impounded property. Cabbler was released on bail within a few hours, and, although he claimed his car and it was returned to him at that time, he did not then or later claim the tagged personal property which was left at the police department and certain items of which were later identified as being stolen. This was the evidence introduced at Cabbler's larceny trial, and its use in that trial is challenged here.

Prior to trial on larceny charges, Cabbler moved to suppress the evidence found in the trunk of his car, arguing that the car had been illegally seized and searched, the same issue he raised in his petition below. A hearing was held on the motion, in which all the relevant facts concerning the seizure were developed. The motion was denied and petitioner was convicted at the trial. He appealed to the Virginia Supreme Court, raising the search and seizure issue along with other issues. The Virginia Supreme Court, in a formal opinion, affirmed his convictions, holding that the seizure of the car and the search thereof were not in violation of his constitutional rights. *Cabbler v. Commonwealth*, 212 Va. 520, 184 S.E.2d 781 (1971). Cabbler sought review in the United States Supreme Court by way of petition for writ of certiorari, which was denied. 405 U.S. 1073, 92 S.Ct. 1501, 31 L.Ed.2d 807 (1972).

1. The testimony is in conflict as to whether the car keys were returned to Cabbler by the officers and later given back to them.

2. There was testimony that the officers had seen the pistol in the car before they entered the hospital. The seizure of the pistol is not an issue in this case, and we note that it was in plain view regardless of when the officers first saw it. Cabbler's convictions of which he here complains were unconnected with the pistol or the shooting incident.

3. Such a claim, indeed, was asserted on account of this very impoundment long before the institution of this suit in the district court.

## I

The Commonwealth, in the court below, and on appeal here, argues that the claim of the petitioner is not one cognizable in a federal habeas corpus proceeding. It asks us to adopt the rationale of Mr. Justice Powell in his concurring opinion in *Schneckloth v. Bustamonte*, 412 U.S. 218, 250, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), and hold that, since the petitioner was provided with a fair opportunity in the state courts to raise and have adjudicated the Fourth Amendment claim, and since his claim does not go to his innocence but rather to the police procedures used, he should not be entitled to federal habeas corpus relief even assuming we were to conclude that the adjudication of his constitutional claims was in error. It argues that "federal collateral review of a state prisoner's Fourth Amendment claims— claims which rarely bear on innocence— should be confined solely to the question of whether the petitioner was provided a fair opportunity to raise and have adjudicated the question in the state courts." *Schneckloth*, p. 250, 93 S.Ct. p. 2059. (Mr. Justice Powell concurring). And, of course, the argument might apply with special force when a petition for certiorari has been denied.[3a]

■ Cabbler has had a full and fair opportunity to have his claim adjudicated in the state courts. The claim was raised, a hearing to determine the facts was held, and the state trial court and Supreme Court both specifically addressed the issue. We agree with the state on this. But *Schneckloth* does not overrule *Kaufman v. United States*, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969), which holds permissible collateral review of search and seizure claims under 28 U.S.C. § 2255, and *Whitely v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), *Harris v. Nelson*, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281

(1969), and *Mancusi v. DeForte*, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968), which allowed such collateral review of state convictions. Both the opinion of the court (412 U.S. p. 249, n. 38, 93 S.Ct. 2041) and Mr. Justice Blackmun's concurrence (p. 249, 93 S.Ct. 2041) indicate that the opinion does not reach these cases and find instead that the search in issue was permissible under the Fourth Amendment. See also *Cardwell v. Lewis*, 417 U.S. 583, 596, 94 S.Ct. 2464, 41 L.Ed.2d 325 (Mr. Justice Powell concurring) and n. 12 (1974).

We are thus of opinion that we must reach the merits of Cabbler's Fourth Amendment claim and decline to follow the concurring opinion of Mr. Justice Powell in *Schneckloth*. On this subject generally, see Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners*, 76 Harv.L.Rev. 441 (1963).

## II

■ When the police arrested Cabbler, they could have left the car where it was; however, it does not seem to us to be unreasonable police procedure to give protection to the personal effects of a prisoner. See *United States v. Sifuentes*, 504 F.2d 845, 849 (4th Cir. 1974); *Cabbler v. Commonwealth*, 212 Va. 520, 184 S.E.2d 781 (1971). The evidence is overwhelming that the sole purpose of the impoundment was to protect the car and its contents until Cabbler could reclaim them. This is not contested anywhere in the proceeding. As the district court observed, "it would be anomalous to find that the Fourth Amendment, designed to insure the sanctity of private possessions, *compelled* the police to leave the personal effects of a prisoner . . . scattered in the street . . . ." 374 F.Supp. 690, 693. Additionally, the car in this case represented a nuisance where it was parked,

---

**3a.** The application for, and denial of, certiorari, while it emphasizes the opportunity of the prisoner to have his case adjudicated on the merits, of course " . . . imports no ex-

pression of opinion upon the merits of the case . . . ." *United States v. Carver*, 260 U.S. 482, 490, 43 S.Ct. 181, 182, 67 L.Ed. 361 (1923).

in the driveway to the emergency room of a hospital. See *Cady v. Dombrowski,* 413 U.S. 433, 447, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). We are of opinion that when a person is arrested away from home, the police may impound the personal effects that are with him at the time to ensure the safety of those effects or to remove nuisances from the area. See *Sifuentes,* pp. 848, 849.

*Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), has a similar factual basis to the one at bar. There, the suspect's car had been impounded for evidence, not for safekeeping. Operating under a police regulation that required all impounded vehicles to be searched thoroughly and to secure all valuables in it, the arresting officer discovered incriminating evidence as he was securing a door and window. The court held that the evidence was not obtained as the result of a Fourth Amendment search. Rather, it found that the actions of the officer were taken to protect the car while it was in police custody, and "[n]othing in the Fourth Amendment requires the police to obtain a warrant in these narrow circumstances." *Harris,* p. 236, 88 S.Ct. p. 993. The court further stated that "[t]he admissibility of evidence found as a result of a search under the police regulation is not presented in this case." *Harris,* p. 236, 88 S.Ct. p. 993. Here, the officers made an inventory of the contents of the auto under a department requirement of many years' standing. The Commonwealth urges us to hold that this was not a search, but rather just a housekeeping function as in *Harris.* In view of the disposition we make of the case, it is not necessary for us to reach that question, but the reasoning of *Harris* is persuasive to our holding. Assuming that the intrusion into the contents of the automobile was a search, we are of opinion it was reasonable rather than unreasonable.

In *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), the Supreme Court dealt with what was conceded to be a search of a car removed by the police to a private lot. The driver of the car was a policeman from another city. While intoxicated, he had wrecked his car and subsequently had been arrested for drunken driving. The police had his car towed to a private lot, where they later searched it for his police revolver which they believed he had with him. Their sole motive was to secure the revolver from falling into improper hands. As a result of this search, in accordance with " 'standard procedure in [that police] department,' " p. 443, 93 S.Ct. p. 2529, evidence was found to link the driver with a murder. After determining that seizure of the vehicle was lawful, the Supreme Court determined that the case was controlled by *Harris,* *supra,* and *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), even though *Harris* had been held not to be a search in the sense the word is used in the Fourth Amendment. As the court stated, "(i)n *Harris* the justification for the initial intrusion into the vehicle was to safeguard the owner's property and in *Cooper* it was to guarantee the safety of the custodians." *Cady,* 413 U.S. p. 447, 93 S.Ct. p. 2531. It went on to find that a search to protect the public from a dangerous weapon was also reasonable.

█ The search in the case at hand had two purposes: (1) to protect the owner's property and (2) to protect the city from false claims. These reasons would seem to be a reasonable basis for a search of a lawfully impounded vehicle. The fact that such protection might be accomplished by less intrusive means, such as a waiver, does not, by itself, make such a search unreasonable. See *Cady v. Dombrowski, supra,* p. 447, 93 S.Ct. 2523.

██ In summary, we hold that the police do not violate the Fourth Amendment when they impound a vehicle to protect it or to remove a nuisance after arresting the driver away from his home, and he has no means immediately at hand for the safekeeping of the vehicle. Assuming an inventory of the contents of a lawfully impounded vehicle to be a search under the Fourth Amendment, an inventory taken of a lawfully impounded

vehicle to protect the property from pilferage or the officers from false claims of loss is reasonable, and hence not in violation of the Fourth Amendment.

We follow here our reasoning in *Sifuentes*, pp. 848, 849, in which the impoundment of a vehicle was authorized because "[s]ound police practices dictated impoundment of the vehicle to protect both its rightful owner and the motel." p. 849. In *Sifuentes*, we construed *Cooper, Harris*, and *Cady*[4] as follows:

"In two recent cases, the Supreme Court held that impoundment provided a lawful reason for initial intrusion into a vehicle whose operator was detained in custody. See, e. g., *Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). In a third case, *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), the Court found the initial intrusion lawful after the police had exercised control over a disabled vehicle by having it towed to a private garage, even though they had relinquished physical custody. In *Cooper*, the court justified the initial intrusion because it afford-

ed protection for the officers; in *Harris*, the intrusion was for the justifiable purpose of protecting the owner's property; and in *Cady*, justification arose out of the necessity to protect the public. See *Cady v. Dombrowski*, 413 U.S. 433, 447, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973)." 504 F.2d 845, 848.

We think the initial impoundment was reasonable as a sound police practice to protect both the owner from loss and the city from damage claims. The routine inventory was likewise reasonable for the same reasons. An additional justifiable reason to impound the vehicle initially was to remove it as a nuisance in the driveway to the hospital emergency room. *Cady*, 413 U.S. p. 447, 93 S.Ct. 2523. The reasoning of *Sifuentes, Cady*, and *Harris* is persuasive and we base our holding on those cases.

We are accordingly of opinion that the impoundment and inventory, as a result of which the personal property introduced in evidence was discovered, was reasonable.[5]

The judgment of the district court is accordingly

*Reversed.*

---

**4.** *Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), sustained as reasonable the search of an automobile impounded as evidence. In that case, the court said: "While it is true . . . that 'lawful custody of an automobile does not of itself dispense with constitutional requirements of searches thereafter made of it' . . . the reason for and nature of the custody may constitutionally justify the search." 386 U.S. 58, 61, 87 S.Ct. 788, 790, 17 L.Ed.2d 730.

*Cady* limited the holding of *Preston v. United States*, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964): " . . . it stands only for the proposition that the search challenged there could not be justified as one incident to an arrest." 413 U.S. 433, 444, 93 S.Ct. 2523, 2529, 37 L.Ed.2d 706.

**5.** The following cases have been found reasonable impoundment and inventory searches, either or both: *United States v. Kelehar*, 470 F.2d 176 (5th Cir. 1972); *Barker v. Johnson*, 484 F.2d 941 (6th Cir. 1973); *United States v. Mitchell*, 458 F.2d 960 (9th Cir. 1972); *United States v. Pennington*, 441 F.2d 249 (5th Cir. 1971); *United States v. Boyd*, 436 F.2d 1203 (5th Cir. 1971); *United States v. Lipscomb*, 435 F.2d 795 (5th Cir. 1970); *Kimbrough v. Beto*, 412 F.2d 981 (5th Cir. 1969); *Cotton v. United States*, 371 F.2d 385 (9th Cir. 1967).

Contra: *United States v. Lawson*, 487 F.2d 468 (8th Cir. 1973).