**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-4186

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LONNIE LEROY CARTRETTE,

Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Florence.  R. Bryan Harwell, District Judge. (4:11-cr-00400-RBH-1)

Argued:  December 5, 2012          Decided:  December 31, 2012

Before DUNCAN, AGEE, and DAVIS, Circuit Judges.

Affirmed by unpublished opinion.  Judge Davis wrote the opinion, in which Judge Duncan and Judge Agee joined.

**ARGUED:** James P. Rogers, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant.  Thomas Ernest Booth, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:** William N. Nettles, United States Attorney, Columbia, South Carolina, Alfred W. Bethea, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Florence, South Carolina; Lanny A. Breuer, Assistant Attorney General, John D. Buretta, Acting Deputy Assistant Attorney General, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DAVIS, Circuit Judge:

Lonnie Cartrette appeals his conviction of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and a two-level obstruction of justice sentencing enhancement imposed under United States Sentencing Guidelines § 3C1.1 after the district court found he committed perjury on the witness stand. Cartrette principally argues that the police did not properly impound his vehicle after he was arrested for shoplifting, and that the subsequent inventory search (which revealed the weapon) was thus invalid. He also contends the district court improperly excluded certain photographic evidence and improperly applied the obstruction of justice enhancement.

For the following reasons, we affirm the judgment of the district court.

I.

A.

Conway, South Carolina, Police Department ("CPD") officers Joshua Hardee and Chevis Ridgeway responded to a shoplifting report at a local Wal-Mart around 8:30 p.m. on February 4, 2011. Wal-Mart loss prevention employees had detained Cartrette after he had attempted to shoplift a bottle of perfume. The officers arrested Cartrette for shoplifting and took him out of the Wal-Mart to their patrol car. They asked Cartrette where his car was

in the parking lot, and he indicated the aisle in which his car was located.[1] The officers determined that Cartrette's license was suspended and decided to have his car towed from the lot, even though Cartrette told them that both his wife and brother were not far away and could pick up the car. Indeed, Cartrette told the officers his brother was at a restaurant next to the Wal-Mart parking lot.

Nonetheless, the officers opted to impound the vehicle and conduct an inventory search. While the CPD has no written policy addressing when vehicles should be impounded (as opposed to when they should be searched after impoundment), Officers Ridgeway and Hardee testified that the standard procedure is to impound a vehicle when the driver is arrested and no other driver is present to take custody of the vehicle. Thus, while Cartrette remained in the police cruiser with Hardee, Officer Ridgeway walked to Cartrette's vehicle and began an inventory search.

The CPD policy for inventory searches states:

G. Automobile Inventories

---

[1] Apparently, the Wal-Mart employees had questioned Cartrette before the officers' arrival and the officers quickly learned that Cartrette had a vehicle nearby. Cartrette confirmed at oral argument that he makes no contention that the officers learned of the car's presence through custodial questioning by the officers. Indeed, Cartrette apparently requested that the officers place in his vehicle a container of dog food (which, unlike the purloined perfume) he had paid for at the register in the Wal-Mart. We are told they did as he requested.

4

1. Officers will routinely conduct a warrantless inventory of any lawfully impounded vehicle.
2. Warrantless inventories are done to:
   a. Protect the owner's property
   b. Protect the Department against claims of lost or stolen property
   c. Make sure that no weapons or other dangerous instruments fall into the hands of vandals or thieves.
3. Officers will complete a Vehicle Impound Form on every impounded vehicle.

J.A. 82. Ridgeway found a machete and a BB gun in the vehicle's passenger compartment. He then opened the trunk and found, wrapped in shirts or sweatshirts, a short-barrel, pump action shotgun. Cartrette stipulated at trial that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, and thus was ineligible to possess firearms.

B.

Cartrette was indicted in the United States District Court for the District of South Carolina on March 22, 2011, on one count of being a felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e). Cartrette filed a motion to suppress the shotgun, arguing that the search of his car's trunk violated his rights under the Fourth Amendment. In a pre-trial motions hearing and at trial, the arresting officers testified to the CPD impoundment procedure. Officer Hardee testified that the standard procedure is to impound a vehicle when no other driver is present:

5

> Q: And is that standard operating procedure with Conway Police Department, that if you arrest a suspect and there is no other driver present, that you would call a wrecker and impound the car?
>
> A: Yes, sir. We do that to cover ourselves. That way nothing happens to the gentleman's vehicle.

J.A. 32.

Officer Ridgeway testified that "[o]nce we place somebody under arrest, any of their property that's not able to go with them to the jail becomes our responsibility, to include vehicles." J.A. 117. Officer Ridgeway also testified:

> Q: Now, the defense asked a question as to whether or not you have any discretion as to wait for another driver to come and get the vehicle.
>
> A: My understanding is that there is not – I mean I've never personally practiced it, and I don't know that it is practiced in the department.
>
> Q: Standard procedure is you would impound the vehicle --
>
> A: Correct.
>
> Q: -- when someone's arrested unless there is another driver present?
>
> A: Yes, sir.

J.A. 45-46. The court denied the motion to suppress, reasoning that the search of the trunk was a proper inventory search after police had reasonably impounded the vehicle because there was no

6

known individual immediately available to take custody of the vehicle. See J.A. 80-85.[2]

At trial, Cartrette testified that he, his brother, Richard "Ricky" Loggins, and Loggins' girlfriend had driven to the Wal-Mart to get dog food, and that the brother and his girlfriend went to a nearby restaurant while Cartrette went into Wal-Mart. He paid for the dog food but admitted to shoplifting a bottle of perfume, valued at $6, for his stepdaugther.[3] When Wal-Mart loss prevention employees stopped him for shoplifting, they took him to the loss prevention office in the back of the store. When the police officers arrived, he said, they laid out his possessions on a counter, noticed the keys, and asked him where the car was. He allegedly responded, "the car's setting in the parking lot, but it's not mine." J.A. 62. Cartrette, denying any knowledge that the shotgun was in the car, testified that the shotgun belonged to another brother, Jason Mishoe, and that he had seen it only once before.

---

[2] The district court did, however, suppress Cartrette's statements to the officers regarding the shotgun after they discovered it, finding that, contrary to the officers' testimony, Cartrette had not been advised of his right to remain silent.

[3] The value of the perfume is not in the record, but Cartrette's counsel indicated at oral argument it was worth $6.

7

Mishoe, however, testified that while the gun had previously belonged to him, he had given up possession of it before the night of Cartrette's arrest. Specifically, he testified that the shotgun found in Cartrette's trunk first belonged to Lisa Pate, a former girlfriend of Mishoe's who had once lived with him. Mishoe said he had other guns in his house, but after he was convicted for assault and battery and child neglect, he was no longer allowed to possess firearms. He testified that his father therefore took the guns, and that Cartrette then took the guns from the father.

On cross examination, defense counsel introduced a photo, uploaded to Facebook in 2010, of Mishoe holding two shotguns – one of them the shotgun later found in Cartrette's trunk. Mishoe said the photo was taken in 2009, before he was barred from possessing firearms. When the prosecutor objected on relevancy grounds to the introduction of additional photos showing Mishoe with guns, the court excluded the other photos under Federal Rule of Evidence 403, which allows a court to exclude relevant evidence for reasons including undue delay, waste of time, and the needless presentation of cumulative evidence. The court ultimately admitted the photo of Mishoe holding two shotguns, and a Facebook printout of the same, but excluded the other photos.

A jury found Cartrette guilty of one count of unlawfully possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). At sentencing, the court applied a two-level enhancement for obstruction of justice, finding that Cartrette perjured himself at trial in that he "was not credible in the opinion of The Court" and "g[a]ve false testimony on a material matter with the willful intent to deceive." J.A. 353. With a criminal history category of III and an offense level of 22, including the two-level obstruction of justice enhancement, the Guidelines range was 51 to 63 months. Without the enhancement, the range would have been 41 to 51 months. The court sentenced Cartrette to 54 months' imprisonment and three years of supervised release.

Cartrette filed a timely notice of appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.

II.

Cartrette argues on appeal that (1) the impoundment of his vehicle was unlawful, and thus the shotgun found in the subsequent inventory search should have been suppressed; (2) the district court erred in excluding certain photos of his brother holding firearms; and (3) the court erred in applying a two-level sentencing enhancement for obstruction of justice. We address each issue in turn.

9

A.

1.

Cartrette first argues the district court erred in its denial of his motion to suppress the shotgun found in the trunk of his car. We review a district court's factual findings on a suppression motion for clear error and its legal conclusions de novo. United States v. Hernandez–Mendez, 626 F.3d 203, 206 (4th Cir. 2010), cert. denied, 131 S.Ct. 1833 (2011).

2.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. As a general rule, the Fourth Amendment requires police to obtain a warrant before conducting a search. See Maryland v. Dyson, 527 U.S. 465, 466 (1999). "Any evidence obtained in violation of the Fourth Amendment may be suppressed under the exclusionary rule." United States v. Banks, 482 F.3d 733, 738 (4th Cir. 2007). The Supreme Court, however, has held warrantless searches to be valid if the search "'falls within one of the narrow and well-delineated exceptions' to the Fourth Amendment's warrant requirement." United States v. Currence, 446 F.3d 554, 556 (4th Cir. 2006) (quoting Flippo v. West Virginia, 528 U.S. 11, 13 (1999)).

An inventory search is a well-recognized exception to the warrant requirement. See South Dakota v. Opperman, 428 U.S. 364, 369-72 (1976). Opperman held that when vehicles are lawfully impounded, it is reasonable for the police to secure and inventory the vehicle's contents so long as there exists a "standard police procedure" for doing so. Id. at 372. The Court gave three reasons for allowing inventory searches: (1) to protect the vehicle owner's property while it remains in police custody; (2) to protect the police against claims or disputes over lost or stolen property; and (3) to protect the police from potential danger. Id. at 369.

We have stated: "A proper inventory search is merely an incidental administrative step following arrest and preceding incarceration, conducted to protect the arrestee from theft of his possessions, to protect the police from false accusations of theft, and to remove dangerous items from the arrestee prior to his jailing." United States v. Murphy, 552 F.3d 405, 412 (4th Cir. 2009) (quoting United States v. Banks, 482 F.3d 733, 739 (4th Cir. 2007)). The vehicle must be in the lawful custody of the police at the time of the search, United States v. Brown, 787 F.2d 929, 932 (4th Cir. 1986), and the search must be conducted pursuant to standard criteria, Colorado v. Bertine, 479 U.S. 367, 374 n.6 (1987). For an inventory search policy to be valid, "it must curtail the discretion of the searching

11

officer so as to prevent searches from becoming a 'ruse for a general rummaging in order to discover incriminating evidence.'" Banks, 482 F.3d at 739 (quoting Florida v. Wells, 495 U.S. 1, 4 (1990)). Officers must administer the search in good faith. Bertine, 479 U.S. at 374.

For the police to lawfully impound a vehicle after an arrest, the officer must reasonably believe that "there was no known individual immediately available to take custody of the car, or [that] the car could have constituted a nuisance in the area in which it was parked." Brown, 787 F.2d at 932. The Supreme Court has stated that the impoundment of a vehicle is a valid "community caretaking" function of police. Cady v. Dombrowski, 413 U.S. 433, 441-43 (1973). And while the Court has been consistent in holding that inventory searches must be conducted according to standardized criteria, see Bertine, 479 U.S. at 374 n.6, the Court has afforded police more discretion when it comes to the decision to impound vehicles. The Bertine Court stated that "[n]othing in Opperman or Lafayette prohibits the exercise of police discretion [in the impoundment of vehicles] so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." Id. at 375.

In Cabbler v. Superintendent, Virginia State Penitentiary, 528 F.2d 1142 (4th Cir. 1975), we upheld the impoundment and

12

inventory search of a vehicle left in the driveway of a hospital emergency department. The police followed Cabbler's car to a Roanoke, Virginia, hospital, where Cabbler parked the car in the driveway and went into the hospital. Id. at 1144. Police entered the hospital and arrested Cabbler on an outstanding warrant. Id. While being placed in the police car, Cabbler gave the officers the keys to his car and asked them to roll up the windows. Id. In so doing, the officers found a pistol in the back seat. Id. Cabbler was taken away, and the officers impounded his car and conducted an inventory search. Id. We upheld the search, noting the "overwhelming" evidence that the purpose of the impoundment was to protect the car and its contents. Id. at 1145. We also observed that the car was a "nuisance" where it was parked – a hospital driveway. Id. at 1145-46. We thus held that "the police do not violate the Fourth Amendment when they impound a vehicle to protect it or to remove a nuisance after arresting the driver away from his home, and he has no means immediately at hand for the safekeeping of the vehicle." Id. at 1146.

We reaffirmed our Cabbler holding in Brown, 787 F.2d 929. In Brown, a police officer noticed Brown's car weaving down the highway and striking a parked car. Id. at 930. The officer stopped Brown and administered a field breath test, confirming that Brown was intoxicated. Id. The officer then determined that the passengers in the car had also been drinking, making them

13

unavailable to take custody of the vehicle. Id. at 931. The officer impounded the car, drove it to a police station, and conducted an inventory search, finding a short-barreled rifle under the driver's seat. Id. Brown challenged the impoundment and search, arguing that the car should have been left in the custody of his girlfriend, who lived above the business in whose parking lot the car was located. Id. at 932. We upheld the impoundment and subsequent search, stating that the question was not whether there was a need for police to impound the vehicle, but whether the officer's decision to impound the vehicle "was reasonable under the circumstances." Id. We observed that while the officer could have tried to reach the girlfriend and leave the vehicle with her, the decision to not do so did not render the impoundment unreasonable. Id. We noted that the parking lot where the vehicle was located was for both apartment dwellers and business patrons, and so the officers could have reasonably concluded that the car would have been a nuisance if left in the lot. Id. Therefore, we held, the police "could reasonably have impounded Brown's vehicle either because there was no known individual immediately available to take custody of the car, or because the car could have constituted a nuisance in the area in which it was parked." Id.

3.

In the instant case, no one was immediately available to take custody of Cartrette's vehicle, and a reasonable officer could have concluded that it constituted a nuisance where it was parked, in a Wal-Mart parking lot. Even if we credit Cartrette's testimony that his brother was nearby – testimony the district court did not find credible, see J.A. 353 – the police were not required to stay on the scene and wait for the brother to return. See Brown, 787 F.2d at 932 (impoundment reasonable when no known individual is "immediately available to take custody of the car").

Furthermore, we are not persuaded by Cartrette's argument that the Conway Police Department's lack of a written impoundment policy renders the impoundment unlawful. Bertine requires standard criteria for impounding vehicles, 479 U.S. at 375, but it does not require the criteria to be in writing. Here, the testimony of Officers Ridgeway and Hardee indicates there was a standard procedure to impound vehicles when no one is immediately available to take custody of the vehicle, and that they understood and followed that procedure. The district court was entitled to credit that testimony.[4]

_____

[4] Even apart from its non-precedential status, our unpublished opinion in United States v. Johnson, Nos. 11-5049, 11-5050, 2012 WL 3538876 (4th Cir. Aug. 17, 2012) (per curiam), (Continued)

15

We also find that the inventory search conducted subsequent to the impoundment was a lawful search that followed the CPD's inventory search policy. We therefore hold that Cartrette's vehicle was lawfully impounded pursuant to standard CPD procedure, and the inventory search was lawfully conducted pursuant to a written policy.

B.

1.

Cartrette next argues that the district court erred in declining to admit certain photos of his brother, Mishoe, holding various firearms. "We review rulings on the admissibility of evidence for abuse of discretion and will only overturn an evidentiary ruling that is arbitrary and

---

cited by Cartrette at oral argument, is of no help to him. In Johnson, we upheld a vehicle impoundment and inventory search where the driver was not properly licensed, the owner of the vehicle was not present, and the vehicle presented a road hazard. Id. at *1. We held the impoundment properly followed the procedure spelled out in the Prince George's County, Maryland, Police Department General Order Manual, which provides for the immediate impoundment of vehicles that are "impeding the movement of traffic" or parked "in a manner constituting a threat to public safety." Id. at *3. The Prince George's County Police Department's commendable decision to commit to writing its impoundment policy does not require other departments to do the same, nor are other departments required to follow its standards. Here, it is sufficient that the CPD had a standard procedure that comported with our holdings in Brown and Cabbler, and that the district court found that the officers followed this procedure.

irrational." United States v. DeLeon, 678 F.3d 317, 326 (4th Cir. 2012) (citing United States v. Cole, 631 F.3d 146, 153 (4th Cir. 2011)).

2.

The district court admitted a photo of Mishoe holding two guns, one of them the shotgun found in Cartrette's trunk. J.A. 244(a). The court also admitted a printout of Mishoe's Facebook page showing that photo. J.A. 244(b). But the court declined to admit six photos of Mishoe with guns, and eight pages of Facebook printouts showing those photos, citing the marginal relevance of the photos and principles underlying Federal Rule of Evidence 403. Cartrette argues that the court's refusal to admit these additional photos prejudiced him in that he was not able to show that Mishoe had a penchant for weapons. Cartrette also argues that the other pictures "would have buttressed the defendant's contention that it was Mishoe who placed the sawed-off shotgun in the trunk." Cartrette Br. 11. These excluded photos indeed show Mishoe with weapons, but they do not show him with the vehicle in which the shotgun was found. The photos are duplicative of the photo that was admitted: All are undated photos, uploaded to Facebook in 2010, that show Mishoe with various firearms. (One excluded photo depicts Mishoe making an obscene gesture, but does not show a firearm.)

17

Under Federal Rule of Evidence 402, "All relevant evidence is admissible," and evidence which is not relevant is not admissible. However, Rule 403 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403. The six additional photos excluded by the district court were cumulative. The court admitted a photo showing Mishoe with the shotgun found in Cartrette's trunk, and Cartrette cross-examined Mishoe about the photo. Cartrette has not shown how the additional, undated photos would have aided his defense.

Nor has Cartrette shown the district court abused the broad discretion it is afforded on questions of evidence admissibility. In explaining the high bar for successfully challenging a Rule 403 decision by a district court, the District of Columbia Circuit stated, "Rule 403 contemplates the thoughtful consideration of the trial court and leaves the admission of evidence to the sound discretion of the trial judge." United States v. Boney, 977 F.2d 624, 631 (D.C. Cir. 1992). The Third Circuit further observed, "If judicial self-restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal." United States

18

v. Long, 574 F.2d 761, 767 (3d Cir. 1978). The Seventh Circuit added, "Special deference also is due the district court's assessment of the probative value of evidence because that court is in the best position to balance probative value against the danger of unfair prejudice." United States v. Brown, 7 F.3d 648, 651 (7th Cir. 1993).

We think these observations have significant salience here. Because the additional photographs Cartrette sought to admit were cumulative of an already admitted photo and would have done little to bolster Cartrette's theory of defense, we decline to find that the court abused its discretion in excluding them.

## C.

### 1.

Lastly, Cartrette argues that the district court erred in adding a two-level enhancement under U.S.S.G. § 3C1.1 for obstruction of justice. In assessing whether a district court has properly applied the Sentencing Guidelines, we review legal conclusions de novo and factual findings for clear error. United States v. Llamas, 599 F.3d 381, 387 (4th Cir. 2010).

### 2.

Cartrette argues that we should vacate the obstruction of justice enhancement because he did not perjure himself. Under the Sentencing Guidelines, a two level upward adjustment under § 3C1.1 is warranted

> [i]f (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense.

U.S.S.G. § 3C1.1 The covered conduct includes "committing, suborning, or attempting to suborn perjury." U.S.S.G. § 3C1.1 cmt. n.4(b). When a defendant objects to an obstruction of justice enhancement stemming from his testimony at trial, the sentencing court "must review the evidence and make independent findings necessary to establish [perjury]." United States v. Dunnigan, 507 U.S. 87, 95 (1993). Otherwise, imposition of the enhancement would "be automatic whenever the convicted defendant had exercised her constitutional right to testify in her own behalf at trial." United States v. Smith, 62 F.3d 641, 647–48 n.3 (4th Cir. 1995).

For a sentencing court to apply the obstruction of justice enhancement based on perjury, it must find by a preponderance of the evidence that the defendant when testifying under oath (1) gave false testimony, (2) concerning a material matter, (3) with the willful intent to deceive, rather than as a result of confusion, mistake, or faulty memory. United States v. Jones, 308 F.3d 425, 428 n.2 (4th Cir. 2002) (citing Dunnigan, 507 U.S. at 92-98). We recently clarified how district courts are to

apply U.S.S.G. § 3C1.1: "If a district court does not make a specific finding as to each element of perjury, it must provide a finding that clearly establishes each of the three elements." United States v. Perez, 661 F.3d 189, 193 (4th Cir. 2011). We added, "With respect to willfulness, for example, it would, in the usual case, be enough for the court to say, 'The defendant knew that his testimony was false when he gave it,' but it could not simply assert, 'The third element is satisfied.'" Id. In Perez, we held the district court improperly applied the obstruction of justice enhancement because it did not indicate that the false testimony concerned a material matter or that it was willfully given. Id.

In the instant case, the district court properly found all three elements of the obstruction of justice enhancement had been satisfied. As to the first element – that the defendant gave false testimony – the court stated: "I listened to the testimony in the evidence that was presented. He was not credible in the opinion of The Court. I didn't believe him when he testified. I don't think the jury believed him when he testified. I'm convinced that he did perjure himself." J.A. 353. As to the second and third elements – that the false testimony concerned a material matter and was given with a willful intent to deceive – the court stated, "I think he did give false testimony on a material matter with the willful intent to

21

deceive." J.A. 353. The court repeated that statement later in the sentencing hearing. See J.A. 354. The court also repeated that it did not believe Cartrette's testimony, and stated, "I find that this enhancement applies not just by a preponderance of the evidence but also beyond a reasonable doubt." J.A. 354.

Having made such a finding, the court imposed the two-level enhancement, giving Cartrette a total offense level of 22 with a criminal history category of III, resulting in a Guidelines range of 51 to 63 months. The court sentenced Cartrette to 54 months' imprisonment.

We hold that the court properly made a specific finding as to each element of perjury, and we therefore affirm the obstruction of justice enhancement.


                              III.

For the reasons stated, we hold that (1) the impoundment and inventory search of Cartrette's vehicle were lawfully conducted pursuant to standard police procedures, and therefore were reasonable under the Fourth Amendment; (2) the district court did not abuse its discretion in excluding cumulative photos of Cartrette's brother holding firearms; and (3) the district court properly applied a two-level obstruction of justice sentencing enhancement after it made specific findings

that Cartrette had committed perjury. Accordingly, the judgment of the district court is

AFFIRMED.
