COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Huff, Athey and Fulton
Argued at Lexington, Virginia


LANCE JONATHAN PAYNE

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1398-23-3                   JUDGE JUNIUS P. FULTON, III
                                                        OCTOBER 22, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Shannon T. Sherrill, Judge[1]

Meghan Shapiro, Senior Appellate Attorney (Virginia Indigent
Defense Commission, on briefs), for appellant.

Mary Catherine Talbott, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


        Following a conditional guilty plea, the Circuit Court of Augusta County convicted Lance

Jonathan Payne of possession of methamphetamine in violation of Code § 18.2-250.  On appeal,

Payne challenges the trial court's denial of his motion to suppress, arguing that law enforcement

officers violated his Fourth Amendment protection against unreasonable searches and seizures.  For

the following reasons, we affirm.

                                       BACKGROUND

        "In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party [below]."  *Poole v. Commonwealth*,

73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).  This

standard requires us to "discard the evidence of the accused in conflict with that of the

_____

        * This opinion is not designated for publication.  *See* Code § 17.1-413(A).

        [1] Retired Judge Charles S. Sharp presided over the motion to suppress hearing.

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn [from that evidence]." *Bagley v. Commonwealth*, 73 Va. App. 1, 26 (2021) (alteration in original) (quoting *Cooper v. Commonwealth*, 54 Va. App. 558, 562 (2009)).

Read in the light most favorable to the Commonwealth, the evidence presented at trial demonstrated the following. On October 31, 2021, while travelling on Route 250, Corporal Cody Stroop of the Augusta County Sheriff's Office observed a white Durango with no front license plate pull out in front of him. Despite accelerating his vehicle to about eighty miles per hour, Corporal Stroop was unable to catch up to the vehicle and lost sight of the vehicle. After searching the area, Corporal Stroop eventually located the white Durango in the Avid Hotel parking lot. When Corporal Stroop found the vehicle, he pulled into a nearby parking lot to observe the vehicle. While sitting there, Corporal Stroop witnessed another vehicle pull into the parking lot and drive around the hotel twice. Corporal Stroop witnessed the white Durango flash its high beams "fifteen to twenty times" in an apparent attempt to get the attention of the driver of the other vehicle. Corporal Stroop then observed the person inside the white Durango walk over to the other car and remain there for about three to five minutes and then return to the Durango.

After observing this behavior, Corporal Stroop drove from his location and approached the white Durango and found the appellant, Payne, asleep in the driver's seat. Corporal Stroop asked Payne to exit the vehicle and discovered that Payne did not have a Virginia driver's license. The car was unregistered, and Payne had no proof of insurance. According to Corporal Stroop, Payne "changed his story" about the encounter on Jefferson Highway and his reason for being in the hotel parking lot multiple times throughout their conversation. Corporal Stroop then spoke with the manager of the hotel. Corporal Stroop verified that Payne was not a resident or

- 2 -

guest at the hotel and did not work there. Further, the hotel manager confirmed that Payne had inquired about the possibility of a room, but that Payne did not have the requisite funds to pay for a room. Based on all these circumstances, Corporal Stroop determined that the vehicle had to be towed.

Pursuant to Augusta County Sheriff's Office policy, Corporal Stroop conducted an inventory search of the vehicle before it was towed. He found a phone, which he returned to Payne, and a broken glass smoking device, which tested positive for methamphetamine. Thereafter, Payne was indicted for one count of possession of a Schedule I or II controlled substance.

Payne filed a motion *in limine* seeking to suppress the evidence recovered during the search of Payne and the vehicle. Payne challenged both the initial stop and subsequent search of his person and vehicle. In response, the Commonwealth argued that Corporal Stroop had the necessary reasonable suspicion to first initiate the encounter with Payne and that the subsequent inventory search of the vehicle complied with the requirements of the Fourth Amendment.

The trial court held an evidentiary hearing on January 30, 2023. Corporal Stroop testified at the hearing. He described the circumstances related above, that led to his encounter with Payne. He further testified to the Augusta County Sheriff's Office inventory policy when conducting an impoundment. Specifically, Corporal Stroop testified that "[a]nytime we have, we have to call for a tow truck, we have to make sure there's no valuables inside that vehicle so that it can be reported as stolen, you know, during transport or by the tow truck company." Moreover, Corporal Stroop testified that he was trained in conducting these sorts of inventory searches and that the policy he was referring to was memorialized in writing by the Augusta County Sheriff's Office. On cross-examination, Corporal Stroop admitted that Payne was able to telephone a friend for a ride home and that it might have been possible for Payne to use his

- 3 -

telephone to privately arrange for his car to be towed. When asked about his initial decision to call for a tow truck and have the vehicle impounded, Corporal Stroop testified that, per the Augusta County Sheriff's Office policy, he had the "discretion" to make that decision, as the on-scene officer.

The trial court denied the motion to suppress, finding that the initial stop and subsequent search did not violate Payne's Fourth Amendment rights. Payne entered a conditional guilty plea, preserving his right to challenge the trial court's ruling on the motion to suppress. By final order entered on July 25, 2023, the trial court sentenced Payne to three years' imprisonment, with two years and ten months suspended. The trial court further suspended the two-month active sentence upon Payne entering and completing a drug treatment program. Payne now appeals.

## ANALYSIS

### I. Standard of Review

"When challenging the denial of a motion to suppress evidence on appeal, the [appellant] bears the burden of establishing that reversible error occurred." *Mason v. Commonwealth*, 291 Va. 362, 367 (2016) (citing *Glenn v. Commonwealth*, 275 Va. 123, 130 (2008)). "At this juncture, the Court considers the evidence in the light most favorable to the Commonwealth and affords it the benefit of all inferences fairly deducible from that evidence." *Williams v. Commonwealth*, 71 Va. App. 462, 474-75 (2020) (citing *Hill v. Commonwealth*, 297 Va. 804, 808 (2019)). "We are 'bound by the trial court's findings of historical fact unless "plainly wrong" or without evidence to support them.'" *Parady v. Commonwealth*, 78 Va. App. 18, 29 (2023) (quoting *Knight v. Commonwealth*, 61 Va. App. 297, 305 (2012)). "In addition, we 'give "due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."'" *White v. Commonwealth*, 73 Va. App. 535, 552 (2021) (quoting *Kyer v.*

*Commonwealth*, 45 Va. App. 473, 479 (2005) (en banc)). "However, the Court reviews *de novo* the overarching question of whether a search or seizure violated the Fourth Amendment." *Williams*, 71 Va. App. at 475 (citing *Glenn*, 275 Va. at 130).

## II. The Initial Encounter

"An officer may effect a traffic stop when he has reasonable suspicion to believe a traffic or equipment violation has occurred." *McCain v. Commonwealth*, 275 Va. 546, 553 (2008) (citing *Bass v. Commonwealth*, 259 Va. 470, 475 (2000)). An officer's suspicion is reasonable when considering the totality of the circumstances, the officer had a "particularized and objective basis for suspecting that a person stopped may be involved in criminal activity." *Bass*, 259 Va. at 475 (citing *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). License plates assigned to motor vehicles registered in Virginia must be attached at the front and rear of the vehicle. Code § 46.2-715.

Corporal Stroop testified that after first observing it entering the highway, he witnessed the white Durango traveling on the highway at speeds of at least 80 miles per hour without a license plate affixed to the front of the vehicle.[2] This by itself gave rise to the reasonable, articulable suspicion that Payne had committed both a traffic violation and an equipment violation. Because the vehicle was speeding in violation of the posted speed limit,[3] Corporal

---

[2] Corporal Stroop testified that he was unable to close the distance between himself and the white Durango despite traveling at speeds up to 80 miles per hour.

[3] Code § 46.2-870 provides for the maximum speed limits in the Commonwealth. Per that code section, the maximum speed limit on certain interstate highways; multilane, divided, limited access highways; and high-occupancy vehicle lanes is 70 miles per hour. Even if Payne was travelling on one of these *least restrictive* highways, he still would have been speeding, travelling at 80 miles per hour.

Stroop was justified in initiating the encounter with Payne.[4]  Further, Corporal Stroop was also

justified in investigating whether Payne was in violation of Code § 46.2-715, given that the

vehicle Payne had been operating did not have a license plate affixed to the front of it.  We agree

with Payne that, in asking Payne to "step out [of his vehicle] and [] talk to [Stroop] about the

whole incident," Corporal Stroop effected a detention under the Fourth Amendment.  But this

detention was justified, based on the aforementioned reasonable articulable suspicion that Payne

had violated Code §§ 46.2-870 and -715.  Therefore, the initial encounter was lawful under the

Fourth Amendment.

*III.  The Inventory Search*

To protect the owner's property while it remains in police custody, protect the police

against claims concerning lost or stolen property, and protect the public and police from physical

danger, the Virginia Supreme Court has determined that warrantless inventory searches of

impounded vehicles are valid exceptions to the Fourth Amendment's warrant requirement.

*Reese v. Commonwealth*, 220 Va. 1035, 1038-39 (1980).  "[T]o justify a warrantless inventory

search by the police, the Commonwealth must show 1) the vehicle was lawfully impounded, 2)

pursuant to standard police procedures and 3) the impoundment and subsequent search are not a

pretext concealing an investigatory motive."  *King v. Commonwealth*, 39 Va. App. 306, 310

(2002) (citing *Servis v. Commonwealth*, 6 Va. App. 507, 521 (1988)).  The inventory search

exception finds its roots in the community caretaker doctrine.  *See id.* at 309; *see also South*

_____

[4] On brief, Payne also argues that there was no evidence that the vehicle Corporal Stroop located later in the evening was the same vehicle that he observed earlier speeding on the highway, or that Payne was the operator.  However, Corporal Stroop testified that it was the same vehicle and that when questioned, Payne indicated that he was the only operator of the vehicle.  Taking the evidence in the light most favorable to the Commonwealth, it was a reasonable inference for Corporal Stroop to believe that the vehicle was in fact the same vehicle and that Payne was the operator of the vehicle throughout the entirety of the evening.  *Poole*, 73 Va. App. at 360.

*Dakota v. Opperman*, 428 U.S. 364 (1976); *Cady v. Dombrowski*, 413 U.S. 433 (1973).

"Objective reasonableness remains the linchpin of determining the validity of action taken under the community caretaker doctrine." *King*, 39 Va. App. at 312 (citing *Terry v. Commonwealth*, 23 Va. App. 87, 90 (1996)). The reasonableness of a search depends upon each case's facts and circumstances. *Id.* On appeal, Payne argues that both 1) the decision to impound the vehicle, as well as 2) the inventory search itself did not satisfy the aforementioned legal standard.

Here, Corporal Stroop testified that the decision to impound the vehicle was within his discretion per the Augusta County Sheriff's Office impoundment policy. Based on the circumstances present in this case, Corporal Stroop's decision to impound Payne's vehicle was objectively reasonable. The hotel manager notified Corporal Stroop that the vehicle would not be allowed to remain on the premises. Payne could not have driven the vehicle away because he did not possess a valid driver's license. Moreover, Payne could not have called a friend or associate to the scene to drive the vehicle away because the vehicle was not lawfully registered or insured.

Payne argues on appeal that he should or could have been given the opportunity to arrange a tow himself, thus avoiding any inventory search of the vehicle.[5] Specifically, Payne points to Corporal Stroop's testimony on direct examination wherein he stated that he used his "discretion" in determining that a tow was necessary, but that on cross-examination, Corporal Stroop admitted that it was "possible" that Payne could have arranged the tow himself. This contention fails, as it does not provide all relevant context. Though it is true that *in theory*, Payne may have been able to arrange the tow himself, the record also demonstrates that it was

---

[5] The Commonwealth argues on appeal that Payne did not preserve this argument below. We assume without deciding that he did so. *See McGinnis v. Commonwealth*, 296 Va. 489, 501 (2018) (holding that where a court's ability to review an issue on appeal is "in doubt," the court "may 'assume without deciding' that the issue can be reviewed provided that this permits [the Court] to resolve the appeal on the best and narrowest ground[]").

reasonable for Corporal Stroop to conclude that Payne likely did not have sufficient funds to pay for the vehicle to be towed, as the hotel manager told Corporal Stroop that Payne had attempted to pay for a hotel room but did not have enough money. This fact is sufficient to give rise to the reasonable inference, on the part of Corporal Stroop, that Payne would not have been able to pay for the vehicle to be towed. Therefore, per the Augusta County Sheriff's Office policy, it was objectively reasonable for Corporal Stroop, in his discretion, to call for the vehicle to be towed himself.[6] And as the Fourth Circuit has recognized, "police are afforded 'more discretion' in deciding whether to impound vehicles than in conducting inventory searches." *United States v.*

---

[6] On appeal, Payne alludes to the contention that the "policy" was inherently unreasonable and could not pass constitutional muster, given that the policy allows unfettered discretion to the officer in determining whether to impound a vehicle or not. We agree that based on prior precedent in this area, a policy regarding *when* to impound a vehicle and *how* to conduct an inventory search must meet some standard of "reasonableness" in and of itself, to be constitutional. We recognized in *Commonwealth v. Hocutt*, No. 0104-15-2 (Va. Ct. App. June 23, 2015), that "[t]he purpose of the requirement that the impoundment must occur pursuant to standard procedures is to 'circumscribe the discretion of individual officers.'" *Id.*, slip op. at 6 (citing *Colorado v. Bertine*, 479 U.S. 367, 376 n.7 (1987)). Further, "[t]his requirement alerts each officer to 'the constitutionally permissible limits of conduct in a given situation' and helps minimize the risk that an impoundment is pretextual." *Id.* (quoting *People v. Toohey*, 475 N.W.2d 16, 23, 25 (Mich. 1991)). However, "[t]he requirement does not mean that officers may not exercise *any* discretion." *Id.* (citing *Bertine*, 479 U.S. at 375). "It means simply that the discretion must be exercised 'according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.'" *Id.* (quoting *Bertine*, 479 U.S. at 375). "Additionally, within the discretion provided, the Fourth Amendment does not require officers to choose the least intrusive means available." *Id.* (citing *Hogan v. Commonwealth*, 15 Va. App. 355, 364 (1992)).

Here, taking the facts in the light most favorable to the Commonwealth, it is reasonable to infer that the "discretion" that Corporal Stroop testified he possessed, per the "policy," was *informed by* the surrounding facts present in this case. In other words, we can reasonably conclude that the policy contained certain guidance, reflective of our caselaw, for officers when exercising the discretion as to whether to impound a vehicle, such factors potentially being: 1) is the vehicle lawfully present at its current location?; 2) is the vehicle operable?; 3) does the vehicle present a danger to the community if it were to remain at the premises?; and 4) could the owner or operator facilitate the removal of the vehicle? To the extent that Payne takes issue with a particular aspect of the policy, he did not point to any aspect of the policy below that was unreasonable, vague, or overbroad and therefore did not preserve such an argument on appeal. Rule 5A:18.

*Young*, 751 F. App'x 381, 388 n.3 (4th Cir. 2018) (quoting *United States v. Cartrette*, 502 F. App'x 311, 315-16 (4th Cir. 2012)).[7]

Having determined that the impoundment of the vehicle was proper, Corporal Stroop was required to search the vehicle to ensure it contained no dangerous contents and to secure any valuables that the County might be liable for if they were to be lost. Although Corporal Stroop indicated that he was in possession of a copy of the actual policy, it was not admitted in evidence and Corporal Stroop testified that he conducted both the impoundment and the subsequent inventory search in accordance with county policy.[8]

The glass smoking device with methamphetamine residue was located in plain view[9] in the floorboard of the driver's seat. Moreover, no evidence of any improper investigatory motive was presented. Therefore, the search was reasonable under the inventory exception. *See King*, 39 Va. App. at 309-10.

---

[7] Though this unpublished Fourth Circuit case is not binding on this Court, we are persuaded by its rationale. *Cf. Toghill v. Commonwealth*, 289 Va. 220, 227 (2015) ("[T]his Court considers Fourth Circuit decisions as persuasive authority, [though] such decisions are not binding precedent for decisions of this Court." (citing *Lockhart v. Fretwell*, 506 U.S. 364, 376 (1993))).

[8] As stated in footnote 6, *supra*, while we recognize that any policy regarding *how* to effect an inventory search must inherently be reasonable, Payne did not point to any particular aspect of the policy below that was unreasonable, and has therefore waived any argument regarding the reasonableness of the particular aspects of the Augusta County Sheriff's Office policy. Rule 5A:18.

[9] "The theory of the plain view doctrine is that an individual has no reasonable expectation of privacy in items that are in plain view." *Daniels v. Commonwealth*, 69 Va. App. 422, 435 (2018) (quoting *Commonwealth v. Thornton*, 24 Va. App. 478, 483 (1997)). The United States Supreme Court has held that three requirements must be met for the plain view exception to the warrant requirement to apply: "1) that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, 2) that the incriminating character of the evidence must be immediately apparent, and 3) that the officer have a lawful right of access to the object itself." *Id.* (quoting *Cauls v. Commonwealth*, 55 Va. App. 90, 99 (2009)).

CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*